In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2235

KEVIN J. LOVELESS,

*Plaintiff-Appellant*,

*v.*

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division at Lafayette.
No. 4:14-cv-36— **Joseph S. Van Bokkelen**, *Judge*.

ARGUED DECEMBER 16, 2015 — DECIDED JANUARY 13, 2016

Before MANION, KANNE, and WILLIAMS, *Circuit Judges*.

KANNE, *Circuit Judge*. Kevin Loveless applied for Disability Insurance Benefits claiming that he could not work because of a shoulder impairment, diabetes, and pancreatitis. An Administrative Law Judge concluded, however, that Loveless could perform light work with restrictions. The Appeals Council and the district court upheld that determi-

nation, but Loveless insists that the ALJ erred by minimizing the opinion of his personal physician and disbelieving his own testimony about the limiting effects of his impairments. We reject these contentions.

## I. BACKGROUND

Loveless, who is now 56, has a long work history that includes jobs as a warehouse worker, delivery person, restaurant owner, and plumbing supply manager. In 2009 his personal physician, Dr. John Cusack, referred Loveless to an orthopedic surgeon, Dr. Peter Torok, because of persistent complaints of pain in his right shoulder that had not responded to treatment including steroids, injections, physical therapy, and anti-inflammatory medication. Dr. Torok performed arthroscopic surgery in September 2009 and removed a bone spur from Loveless's right shoulder. A later X-ray did not show any abnormality, and Loveless returned to his warehouse job around March 2010.

Then in July 2010 Loveless complained to Dr. Cusack about "arm numbness," "low back pain, leg pain from knees up," "loose stools," and lethargy. Dr. Cusack's physical examination did not identify a reason for Loveless's complaints, but a blood test did show a high glucose level. Afterward, Loveless continued working.

In December 2010 he reinjured his right shoulder lifting and throwing heavy bags at work. Dr. Torok diagnosed a torn rotator cuff, and an MRI showed bone degeneration and damage to the cartilage, muscles, and tendons in the right shoulder. Dr. Torok surgically repaired the rotator cuff in February 2011. Two weeks after that operation, Dr. Torok noted after X-rays that the incision was healing well and that

Loveless was "doing great." Loveless continued to regain range of motion with decreasing pain, and by April 2011 he was reporting that his shoulder pain was well controlled and that he could elevate his right arm to 90 degrees.

Loveless's recovery was interrupted later that month when he sought treatment at the emergency room after two days of nausea, vomiting, and abdominal pain. He was admitted to the hospital and diagnosed with a number of alcohol-related conditions, including alcohol poisoning, alcoholic pancreatitis, and alcoholic hepatitis. An MRI of his brain showed minimal areas of chronic ruptured or clotted blood vessels but no other abnormality. During his hospitalization Loveless also was diagnosed with Type II diabetes, which requires that he inject insulin daily. Loveless was discharged after 17 days. Two months later, at the end of June 2011, he was referred to a gastroenterologist and reported that he had abstained from alcohol and lost 40 pounds since his hospitalization.

Two weeks after that, in mid-July, Loveless returned to Dr. Torok, the orthopedic surgeon, seeking an evaluation for long-term disability. Dr. Torok concluded that Loveless had not regained full range of motion in his right shoulder, but he noted that Loveless's recovery had been hindered by his hospitalization. Dr. Torok declined to declare that Loveless had reached maximum medical improvement until he had completed two more months of physical therapy. That same month Loveless also complained to Dr. Cusack about shoulder pain and fatigue, but Dr. Cusack did not detect any issue after examination and recommended that Loveless exercise more.

By August 2011, physical therapists were noting im-
provement as Loveless completed exercises with fewer
breaks. He reported mowing the lawn with minimal shoul-
der pain and said he had hung blinds and trimmed low tree
limbs. He also was using his right arm to drive except for
steering to the right. Swinging a hammer was more difficult,
but he could manage a couple of swings with his right hand
before switching to both hands. That month Loveless could
lift 12 pounds to chest level, but in September he was able to
lift 16 pounds to chest level, his shoulder range of motion
was within functional limits, and his shoulder strength and
endurance had improved.

Meanwhile, in mid-September 2011, Loveless visited
Dr. Cusack complaining of fatigue, weakness, and glucose
levels that were up and down, but generally stable.
Dr. Cusack did not find anything wrong, however, and rec-
ommended that Loveless continue monitoring his blood
sugar. A few days after that, when Loveless was examined
again by Dr. Torok, he could elevate his right arm
160 degrees. Dr. Torok discharged him from treatment and
cleared him to work with permanent restrictions against lift-
ing more than 10 pounds overhead and 20 pounds overall.
Two weeks later, though, Loveless instead applied for disa-
bility benefits, alleging that he had been unable to work
since January 2011 because of shoulder surgeries, diabetes,
and pancreatitis.

A state-agency physician, Dr. J.V. Corcoran, reviewed
Loveless's medical records and opined that his use of his
right shoulder was limited but he still could perform light
work. Dr. Corcoran concluded that Loveless retained use of
his right hand and could reach occasionally with his right

arm, but he recommended that Loveless never reach over-head with his right arm and that he not crawl or climb ladders, ropes, and scaffolds. Dr. Corcoran also concurred with the lifting restrictions imposed by Dr. Torok. The Social Security Administration then denied Loveless's application in early November 2011.

The following month Loveless complained to Dr. Cusack about frequent falls, numbness in his hands, and pain in his knees and feet. Dr. Cusack ordered another MRI of Loveless's brain, but the results were the same as the MRI eight months earlier.

In January 2012, Dr. Torok completed a private insurer's "physical capabilities evaluation." He did not limit Loveless's ability to sit, stand, walk, or use his hands and feet for repetitive movements, but Dr. Torok did permanently restrict Loveless from lifting or moving more than 20 pounds. Dr. Torok opined that Loveless could perform light work, which the insurer's form defines as being capable of frequently lifting and carrying 10 pounds and occasionally lifting 20 pounds.

In February 2012, another state-agency physician, Dr. M. Brill, reviewed Loveless's file and agreed with Dr. Corcoran's opinion. The Social Security Administration then denied Loveless's application on reconsideration.

Loveless requested a hearing before an ALJ. Until that hearing his complaints to Dr. Cusack multiplied, with mixed results. In March 2012 he reported pain in his right hand and shoulder, and the doctor concluded that his range of motion in that arm was reduced. Then in May 2012 Loveless complained of erratic glucose levels, as well as pain in both

shoulders. This time Dr. Cusack indicated that a physical examination had produced normal results. Yet the very next month, in October 2012, the doctor completed another form for Loveless's private insurer and said—in contrast with Dr. Torok's opinion from January—that Loveless could walk but was unable to work because of chronic fatigue and pain. Then in November Dr. Cusack's exam results again were unremarkable after Loveless complained of unstable glucose levels and that "his shoulder is not better," his "neck hurts," and he "can't lift both arms."

Loveless had similar complaints when he next visited Dr. Cusack in January 2013, nine days before he appeared with his lawyer before the ALJ. The doctor's progress notes from this visit indicate that Loveless "can't lift" and can only raise his "shoulder" 90 degrees (presumably the right shoulder, but the progress notes do not say). That day Dr. Cusack also completed a "medical assessment" form asserting that Loveless could not lift more than 5 pounds with his right arm, could not stand continuously for more than 15 minutes, and could not sit more than 30 minutes continuously or 90 minutes total during an 8-hour work day. He added that Loveless could not ever climb, crouch, or kneel and only occasionally could balance, stoop, or crawl. Dr. Cusack further opined that Loveless could not use his hands except for occasional, simple grasping because of tingling and numbness. Nor could Loveless tolerate, the doctor said, heat, humidity, dust, or fumes, and he could not work around heights or moving machinery. Dr. Cusack opined that it was reasonable to expect Loveless to require time to lie down and rest during the day to ameliorate the effects of pain and fatigue. He opined that Loveless could be expected to miss, on average, two to three days of work per month.

Loveless testified before the ALJ that he was unable to work due to constant aching in his shoulders and neck, discomfort in his lower back from standing too long, and occasional tingling and numbness in his feet, fingers, and hands that he attributed to diabetes and varying glucose levels. He testified that turning his head in either direction aggravated his pain and that he could look down for only 5 to 10 minutes. He also testified that he had fallen about 10 times since his hospitalization, but doctors had not determined a reason for those falls. Loveless said he could attend to his personal hygiene but had to sit in the shower. He didn't assist with heavier housework like vacuuming, mopping, and sweeping but did try to help his wife with the cooking and laundry. Loveless noted that he used a riding lawn mower to cut the grass, but even that was difficult. He acknowledged driving to the hearing but said that typically he drives only to medical appointments or to buy gas and groceries.

The ALJ asked a vocational expert ("VE") about jobs for a person of Loveless's age, education, and work experience who could perform light work that involved no use of the dominant right arm to lift more than 10 pounds overhead; only occasional use of the dominant right arm to reach forward or overhead; no crawling or climbing of ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, or climbing ramps and stairs; and no exposure to uneven terrain, slippery surfaces, or unprotected heights. The VE answered that work as a dealer-account investigator, parking lot cashier, and photofinishing counter clerk was available. The ALJ then directed the VE to assume the same individual but restricted to sedentary work. The VE replied that jobs were available for food checkers, credit-card clerks, and, again, photofinishing counter clerks.

The ALJ assessed Loveless's claim using the sequential evaluation process, *see* 20 C.F.R. § 404.1520, and concluded that he was not disabled. The ALJ found, at Step 1, that Loveless was insured through the end of 2015 and hadn't engaged in substantial gainful activity since his alleged onset; at Step 2, that Loveless suffers from diabetes and degenerative joint disease of the right shoulder, both severe, and alcoholic pancreatitis, though not severe; at Step 3, that these impairments, alone or in combination, did not meet or equal a listed impairment; at Step 4, that Loveless was unable to perform his past relevant work; and, at Step 5, that he could perform other available jobs.

For Steps 4 and 5, the ALJ concluded that Loveless had the residual functional capacity to perform light work with limitations: With his right arm he cannot lift overhead more than 10 pounds; with either arm he cannot lift more than 10 pounds frequently or 20 pounds occasionally; he cannot stand, walk, or sit more than 6 hours total in an 8-hour workday; he cannot crawl or climb ladders, ropes, or scaffolds; he can only occasionally reach, balance, stoop, kneel, crouch, or climb ramps and stairs, and he cannot work on uneven terrain, slippery surfaces, or unprotected heights. These restrictions are not as limiting as those recommended in January 2013 by Dr. Cusack, whose opinion, the ALJ reasoned, lacks support in the medical record and thus was entitled to little weight. The ALJ also concluded that several factors undermined Loveless's testimony concerning the severity of his impairments, including his daily activities, his routine and conservative medical treatment since 2011, and his earlier reports to physicians that he was experiencing no pain or only minimal pain. The ALJ's credibility finding incorporates the agency's standard boilerplate:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment below.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## II. ANALYSIS

Loveless first argues that the ALJ should have given controlling, or at least greater, weight to Dr. Cusack's opinion from January 2013, since that opinion reflects the doctor's most-recent assessment and, according to Loveless, incorporates all of his health issues instead of a narrow subset. Loveless also argues that the ALJ ignored the opinion given to the private insurer by Dr. Cusack in October 2012; because that opinion is not discussed, says Loveless, an inference arises that the ALJ may have overlooked other evidence.

A treating physician's opinion is entitled to controlling weight unless it is "inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In this case, substantial evidence supports the ALJ's assessment that Dr. Cusack's January 2013 opinion contradicts both the objective medical evidence and Loveless's own account of his abilities.

When a treating source's opinion is not given controlling weight, the ALJ applies other factors in determining what weight to give that opinion. *See* 20 C.F.R. § 404.1527(c)(2). Loveless contends that Dr. Cusack's progress notes substantiate the extensive functional limitations incorporated into his January 2013 opinion. That's not so; those notes document Loveless's *subjective* complaints yet generally reflect negative findings by the physician after physical examination. *See* 20 C.F.R. § 404.1528(a). Here, the ALJ properly discounted Dr. Cusack's medical opinion that rests entirely on the claimant's subjective complaints. *See* 20 C.F.R. § 404.1527(c)(3); *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). The ALJ also properly discounted Dr. Cusack's opinion due to lack of consistency. *See* 20 C.F.R. § 404.1527(c)(4).

As for Dr. Cusack's October 2012 opinion, Loveless presumes that the doctor gave a "medical" opinion, but the Social Security Administration defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, physical and mental restrictions, and residual functional capacity. 20 C.F.R. § 404.1527(a)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Omitted from this definition are opinions about a claimant's ability to work, a question the regulation reserves for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Johansen v. Barnhart*, 314 F.3d 283, 287–88 (7th Cir. 2002). Thus, the ALJ did not have to accept Dr. Cusack's October 2012 conclusory statement that Loveless could not work. The ALJ needed only to weigh Dr. Cusack's assessments about the nature and severity of

Loveless's impairments, which he did. Additionally, an ALJ is not required to list each document he considered, but must only weigh the relevant evidence. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Here the ALJ discussed and evaluated the progress notes and opinions of Dr. Cusack, Dr. Torok, and Dr. Corcoran, as well as Loveless's testimony, as relevant evidence in assessing the claimant's capacity to work.

Loveless next challenges the ALJ's use of language routinely criticized by this court as "meaningless boilerplate." *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see also Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). Loveless argues that the language is faulty and represents forbidden backward analysis requiring remand. But the use of boilerplate is not a ground to remand if the ALJ justified his credibility assessment based on the evidence. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013). And here, although acknowledging Loveless's testimony that he could not work, the ALJ reasoned that this contention was contradicted by the claimant's activities of daily living, his routine and conservative medical treatment since 2011, and many earlier reports of minimal or no pain.

Loveless insists, though, that the ALJ improperly overemphasized his daily activities. As Loveless correctly notes, we have criticized ALJs for equating activities of daily living with an ability to work. *See Bjornson*, 671 F.3d at 647; *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010). But the ALJ did not do this. Rather, the ALJ considered Loveless's description of his daily activities in assessing whether his testimony about

the effects of his impairments was credible or exaggerated. *See* 20 C.F.R. § 404.1529(c)(3)(i) (explaining that agency will consider daily activities in evaluating severity of claimant's symptoms); SSR 96-7P, 1996 WL 374186, at *3 (directing ALJ to consider daily activities in determining credibility of claimant's statements about symptoms); *Pepper*, 712 F.3d at 369 (agreeing with ALJ's reasoning that claimant's daily activities undermined her testimony about extent of her symptoms). For example the ALJ considered Loveless's ability to perform light household chores, drive a car, and shop for groceries. Moreover, the ALJ explicitly acknowledged that Loveless's ability to engage in these daily activities was not conclusive proof that he was able to sustain full-time work but instead was one factor that weighed against his account of disabling limitations.

Loveless also contends that the ALJ failed to give weight to his significant work history. We recently observed that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (*quoting Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)); *see Singletary v. Sec'y of Health, Educ. and Welfare*, 623 F.2d 217, 219 (2d Cir. 1980) (explaining that claimant's history of performing demanding work over long hours "justifies the inference that when he stopped working he did so for the reasons he testified to"); *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980) (claimant's significant work history "demonstrated a considerable inclination toward employment"). But work history is just one factor among many, and it is not dispositive. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). And here the ALJ's silence is not enough to

negate the substantial evidence supporting the adverse credibility finding.

Finally, Loveless argues that the ALJ erred by not incorporating the limiting effects of his diabetes and hand impairments into the assessment of his residual functional capacity. But the ALJ did consider the limited evidence Loveless presented—the diabetes diagnosis, MRIs, glucose levels, and subjective complaints—and added balancing and manipulation restrictions. Loveless does not identify medical evidence that would justify further restrictions.

### III. CONCLUSION

The ALJ's decision is supported by substantial evidence. Accordingly, the district court's judgment is affirmed.