In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2925

ERIC ALVARADO,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:14-cv-01090 — **James E. Shadid**, *Judge.*

ARGUED APRIL 1, 2016 — DECIDED SEPTEMBER 1, 2016

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. In 1993, Eric Alvarado was granted disability benefits due to his impairments, which included a severe learning disorder. In 2004, the Social Security Administration stopped paying those benefits after de-

termining that, despite his severe learning disorder, Alvarado could do certain relatively simple jobs. Because that determination was supported by substantial evidence, we affirm.

## I. BACKGROUND

Alvarado was born in 1967. He was first awarded disability benefits in 1993, when it was determined that he had suffered from severe impairments since birth. He was granted childhood disability benefits and Supplemental Security Income. The Social Security Act requires the Social Security Administration to periodically review whether a recipient remains disabled. Alvarado's eligibility was reviewed and affirmed in 1999. But in a 2004 review, the Administration determined that his disability had ended, so his benefits were discontinued.

Alvarado challenged that determination, but a hearing officer upheld it. After a hearing that included testimony from Alvarado, his family and friends, and experts, an Administrative Law Judge also upheld the decision. The Appeals Council denied review and Alvarado sought review in federal court. But based on the parties' agreement, the district court ordered the case remanded for further fact finding. On remand, the same ALJ made the same determination—that Alvarado's disability had ended.

The ALJ wrote a 39-page opinion explaining her decision. In short, she assumed the correctness of the prior determinations that Alvarado was disabled, but found that the evidence showed his disability had ended. She found that he continued to suffer from a severe learning disorder, which prevented him from performing many jobs, but which did

not prevent him from doing simple jobs that did not require interaction with the public. Because a significant number of such jobs exist in Illinois, she concluded that Alvarado was not disabled. The Appeals Council denied review, a federal magistrate judge recommended affirmance, the district judge affirmed, and this appeal followed.

## II. ANALYSIS

### A.  ALJ Did Not Violate Remand Order

Before we address the merits, we note that many of Alvarado's arguments proceed from a faulty premise: that the ALJ violated the remand order. Alvarado suggests that the order barred the ALJ from evaluating any evidence dating from before 1999 (when Alvarado's eligibility was last affirmed). But that is not what the order says. To the contrary, by directing the ALJ to compare evidence from before 1999 with evidence from after 1999, the order *required* the ALJ to evaluate the earlier evidence.

To be sure, the order limited the scope of the remand, but the limit was not exceeded. In the typical case, the Administration cannot terminate a recipient's benefits without finding that he experienced some "medical improvement" that allows him to work even though he previously could not. *See* 20 C.F.R. § 404.1594(c). There are exceptions to the medical improvement requirement, under which a recipient can be found newly ineligible even if he did not improve medically. The most relevant exception is where "substantial evidence demonstrates that any prior disability decision was in error." *Id*. § 404.1594(d)(4). The remand order limited the ALJ's ability to terminate Alvarado's benefits on the basis of an excep-

tion to the medical improvement requirement.[1] The ALJ did
not violate the order because she did not apply any excep-
tion—she explicitly found that Alvarado had improved.

### B.  Substantial Evidence Supports ALJ's Decision

Because the Appeals Council denied review, we review
the ALJ's decision directly. *Tumminaro v. Astrue*, 671 F.3d 629,
632 (7th Cir. 2011). We will affirm as long as the ALJ's find-
ings were supported by "substantial evidence," 42 U.S.C.
§ 405(g), which is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion,"
*Richardson v. Perales*, 402 U.S. 389, 401 (1971). We will not de-
cide the facts anew, reweigh evidence, or substitute our
judgment for the ALJ's. *See, e.g., Pepper v. Colvin*, 712 F.3d 351,
362 (7th Cir. 2013).

To determine whether a benefits recipient remains eligi-
ble, ALJs follow an eight-step process for childhood disabil-
ity benefits, and a seven-step subset of that process for Sup-
plemental Security Income.  20 C.F.R.  §§ 404.1594(f);
416.994(b)(5). The regulations fully describe the steps, as
does the magistrate judge's written report and recommenda-
tion, so we do not belabor the details. The focus for our pur-
poses is on the ALJ's findings concerning the effects of Al-
varado's learning disorder. The ALJ found that Alvarado had
a severe learning disorder, which would exclude him from
many jobs. But the ALJ found that the disorder was not

---

[1] The ALJ was permitted to apply an exception only if the conditions
for reopening Alvarado's earlier decision were met. *See* 20 C.F.R.
§ 404.988. That would be the case, for example, if the ALJ found Al-
varado's earlier eligibility decisions had been procured by fraud. *Id*.
§ 404.988(c)(1).

completely disabling, and that Alvarado could work a job so long as: (i) it could be demonstrated to him (rather than explained orally or in writing); (ii) it did not require interaction with the public; (iii) it did not involve complex or detailed processes; and (iv) it did not involve processes that changed significantly from day to day. The question for us is whether that finding was supported by substantial evidence.

### 1. Evidence Supporting Finding that Alvarado Remained Disabled

#### i. Medical Opinions

To be sure, the record contained evidence favorable to Alvarado's claim. Most notably, Dr. Luke Dalfiume, a licensed clinical psychologist, opined that given Alvarado's difficulties reading, writing, and doing math, and given his slow processing speed, it was difficult to imagine a job that would be "a good fit." Alvarado argues that the ALJ gave Dr. Dalfiume's opinion "no weight," but that is not right. The ALJ said that she considered Dr. Dalfiume's opinion, and the ALJ's written opinion shows that to be true. For example, on the basis of Dr. Dalfiume's opinion about Alvarado's anxiety, avoidant personality, and attention span, the ALJ found that Alvarado could not perform jobs that required interaction with the public or complex or detailed job processes, or job processes that changed significantly from day to day. And consistent with Dr. Dalfiume's opinion, the ALJ found that Alvarado could not do a job that required reading, writing, or math.

The ALJ did not, however, give *controlling* weight to Dr. Dalfiume's opinions, for several reasons. The ALJ noted that Dr. Dalfiume was hired by Alvarado's lawyer, specifically to

bolster Alvarado's claim to disability benefits. As Alvarado notes on appeal, the fact that a doctor is hired by a claimant is an insufficient reason, on its own, to reject the doctor's opinion. *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). But the ALJ did not rely on the hiring relationship alone. Instead, she gave several reasons for discounting some of Dr. Dalfiume's opinions.

For example, the ALJ noted that Dr. Dalfiume never *treated* Alvarado. *See* 20 C.F.R. § 404.1527(c)(2) (opinions from treating doctors are generally given more weight than those from non-treating doctors). The ALJ also noted that Dr. Dalfiume's opinions in 2012 contradicted his own opinion from 2008, and contradicted opinions that other doctors rendered in 1999 and 2004.[2] *See Skarbek v. Barnhart*, 390 F.3d 500, 503–04 (7th Cir. 2004) (ALJ can discount medical opinion for being inconsistent with other medical opinions, as long as ALJ "minimally articulates" the reasons for discount). The ALJ also noted that Dr. Dalfiume's analysis was based on subjective reports from Alvarado and his mother, rather than objective measurements.[3] *See, e.g.*, *White v. Barnhart*, 415 F.3d

---

[2] The ALJ noted that Dr. Dalfiume's conclusions in 2012 were much bleaker than they were in 2008, and that Dr. Dalfiume did not give reasons for the differences. In 2004, Dr. William Hilger, a state-hired consultative psychologist, concluded that Alvarado was malingering—a conclusion that the ALJ did not adopt outright but did refer to in her opinion. And in 1999, Dr. Valjean Cashen, a licensed clinical psychologist, opined that Alvarado had a learning disorder but could do "entry-level" jobs. (Given that conclusion from Dr. Cashen, and its similarity to the ALJ's own conclusions, Alvarado's separate argument that the ALJ gave too little weight to Cashen's opinion is unavailing.)

[3] The ALJ noted that the circumstances may have given Alvarado and his mother greater-than-typical motivation to portray Alvarado as

654, 659 (7th Cir. 2005) (permissible to discount medical opinion that is based on subjective complaints); *see also* 20 C.F.R. § 404.1527(c)(3). Finally, the ALJ noted that Dr. Dalfiume was not an expert in "vocational issues," so his conclusion that no jobs would be a "good fit" was beyond his expertise. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (whether claimant can perform jobs in the economy is a question for the Administration, not medical experts); 20 C.F.R. § 404.1527(d). These were permissible reasons for the ALJ to give less than controlling weight to Dr. Dalfiume's opinion.

### ii. Lay Testimony

Alvarado testified and was supported by testimony from his mother and brother, Melody Justus (an employee of his mother's flower shop), and the supervisor for Norman Township (where Alvarado lived). The ALJ permissibly rejected the parts of this testimony—from Alvarado's brother and the township supervisor—that were in the nature of expert vocational opinions, rather than fact testimony about Alvarado. On the facts, the witnesses testified that Alvarado could be forgetful and easily distracted. For example, Alvarado testified that he sometimes forgets to buy certain grocery items, even when he uses a list. He also said that his previous work mowing lawns was difficult for him because

---

"considerably impaired." Specifically, at the original administrative hearing (not the hearing on remand), the vocational expert opined that there were hundreds of thousands of jobs that Alvarado could do. In other words, that hearing did not go well from Alvarado's perspective. The subjective statements that Dr. Dalfiume relied on were given by Alvarado and his mother just two days after that hearing.

he would forget how different customers wanted their lawns mowed.

Justus, and Alvarado's mother and brother, all testified that it takes Alvarado longer than most people to complete tasks. They admitted that Alvarado worked at the flower shop, but said that was only so he would have something to do, not because his work was beneficial to the shop.[4] Similarly, though Alvarado admitted to driving regularly, his witnesses said that he typically went places that were familiar to him because he could get lost going new places, as he did not do well with maps or directions. According to his mother, Alvarado could not remember a sequence of instructions given to him orally, but he could do jobs once they were demonstrated to him. And Alvarado testified to some physical limitations—vision problems, bad coordination, and shaky hands. Justus also testified that Alvarado had bad coordination.

The ALJ credited some of this testimony—for example, that Alvarado could not remember a sequence of instructions given to him orally, and that he did better in familiar environments as opposed to new ones. Indeed, the ALJ found that Alvarado "has intellectual deficits that would impose significant restriction on the type of work he could reliably perform." But the ALJ also discounted some of the fact testimony, particularly that of his mother and Justus. The ALJ noted that these witnesses stood to personally gain

---

[4] Alvarado did not tell the Administration about his work at the flower shop. (A claimant's work activities are obviously relevant to the ongoing evaluation of the claimant's abilities.) Instead, the Administration was tipped off by Justus's disgruntled former boyfriend.

from Alvarado's receipt of benefits (because Alvarado lived with his mother for a while before her death, after which he lived with Justus[5]). *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (permissible to discount testimony based on a witness's "incentive to exaggerate"). And more importantly in the ALJ's view, Alvarado's mother and Justus admitted to lying, forging Alvarado's signature, and falsifying receipts, as part of a scheme to evade taxes, which the ALJ found demonstrated their willingness to be untruthful in pursuit of government benefits. Accordingly, the ALJ looked skeptically on any testimony from those two witnesses that was not corroborated by other evidence. That may have been a harsh judgment of their credibility, but it was tied to evidence in the record and was not patently wrong, so we may not disturb it. *See Loveless*, 810 F.3d at 508; *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Pepper*, 712 F.3d at 367.

### 2. Evidence Supporting Finding that Alvarado's Disability Had Ended

The ALJ's conclusion that Alvarado's learning disorder was not completely disabling—and that Alvarado could do certain simple jobs—was supported by substantial evidence. As previously mentioned, Alvarado's mother testified that he had trouble remembering a sequence of oral or written instructions, but said that if he was *shown* how to do a job, he could do it well. His witnesses also testified that, though it might take him longer than other people to do tasks, he persevered until the task was complete.

---

[5] Alvarado argues that Justus "would get no gain" from Alvarado's benefits "because she does not support him." If that is true, it undermines Justus's credibility because it is contrary to her own testimony.

To the ALJ, more important than that testimony was the evidence of Alvarado's *actual* activities. Alvarado obtained a driver's license and drove regularly, including by himself, and including on long trips (to Indianapolis and New Orleans). He was able to travel by public transportation, including by plane and train. He obtained an associate's degree and was only a few credits short of a bachelor's degree. Alvarado notes that his schools provided him with many accommodations, and one school was specifically for students with learning disabilities. But it is also true that he was able to live alone, in a different state from his family, while attending his various schools.

For years, Alvarado assisted at his mother's flower shop, picking up flowers from wholesalers (typically by himself), and making deliveries to customers (sometimes by himself, though not typically). And he performed chores both at home and at the flower shop—he built furniture, prepared simple meals, took out the trash, mowed the lawn, put away the dishes, and (occasionally) did his own laundry. He also helped a friend run for office by passing out campaign literature. For leisure, he watched television, played computer games, visited political websites, and bought and sold things through eBay.

To be sure, the preceding list includes activities of daily living, and we have cautioned ALJs not to equate such activities with the rigorous demands of the workplace. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010). But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether "testimony about the effects of his impairments was credible or exag-

gerated." *Loveless*, 810 F.3d at 508; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (agency considers daily activities to evaluate severity of claimant's symptoms). So, for example, it was permissible for the ALJ to note that Alvarado was given "critical" tasks at the flower shop (picking up and delivering flowers), and to find that this undercut testimony from witnesses suggesting he was not capable of doing *anything* in a workplace. (The ALJ's reasoning was permissible even though the flower shop was owned by Alvarado's mother. *See* 20 C.F.R. § 404.1573(c)(6) (claimant's work activities can be considered even if he was only given the opportunity to work due to a family relationship).)

So substantial evidence supported the ALJ's findings concerning Alvarado's abilities. The ALJ incorporated those findings into a question posed to a vocational expert, who opined that someone with Alvarado's limitations could work as a house cleaner, car washer, or kitchen helper—and over 24,000 such jobs exist in Illinois. In response to further questioning, the expert testified that those jobs could be done by someone with below-average mental abilities, and by someone who lacked vision in one eye and had problems with hand-eye coordination. Indeed the expert said that, in his thirty years of experience, though he had seen people who were *physically* unable to do such jobs, he had never encountered anyone who could not handle the mental demands. Alvarado's appellate briefing marches through a long history of evidence to demonstrate that Alvarado has a severe learning disorder—a contention with which the ALJ agreed—but does not grapple with the expert's testimony that someone with Alvarado's limitations can nonetheless do some jobs.

Because substantial evidence supported the ALJ's findings concerning Alvarado's limitations, and those limitations were incorporated into the questions posed to the vocational expert, the expert's testimony is substantial evidence supporting the ALJ's decision. *See, e.g.*, *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Alvarado complains that the ALJ's hypothetical question did not note that Alvarado processes information slowly and requires supervision. But the ALJ was only required to incorporate limitations that she found supported by the evidence. *E.g.*, *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). And in any event, Alvarado has not shown how such limitations would disqualify him from a job as a car washer or kitchen helper.[6] *See Spiva*, 628 F.3d at 353 (harmless error review applies in Social Security cases).

### III. CONCLUSION

The decision of the district court is AFFIRMED.

---

[6] Alvarado offers no support for the implication in his briefs that someone who processes information slowly would necessarily wash cars, sweep floors, or take out trash slowly.