Robert M. WILLIAMS, Plaintiff-
Appellant,

v.

Nancy A. BERRYHILL, Acting Commissioner of Social Security, Defendant-Appellee.

No. 17-1043

United States Court of Appeals,
Seventh Circuit.

Argued October 3, 2017

Decided November 8, 2017

John Edward Horn, Attorney, Tinley Park, IL, for Plaintiff-Appellant

Megan Hugo, Attorney, Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, Ernest Yi Ling, Attorney, Office of the United States Attorney, Chicago, IL, for Defendant-Appellee

Before MICHAEL S. KANNE, Circuit Judge, ILANA DIAMOND ROVNER, Circuit Judge, DIANE S. SYKES, Circuit Judge

## ORDER

An administrative law judge found that Robert Williams, a 61-year-old veteran, suffers from asthma, chronic obstructive pulmonary disease, hypertension, neuropathy in his right arm, and coronary artery disease. The ALJ concluded that all of these impairments are severe but nonetheless denied Williams's applications for Disability Insurance Benefits and Supplemental Security Income. The Commissioner of Social Security adopted the ALJ's decision, and a magistrate judge, presiding by consent, *see* 28 U.S.C. § 636(c), upheld that decision, *see* 42 U.S.C. § 405(g). We conclude that the ALJ's decision is not supported by substantial evidence because the ALJ wholly rejected Williams's complaints of fatigue and difficulty walking, and therefore we reverse and remand to the agency for further proceedings.

## I. Background

Williams applied in 2012 for Disability Insurance Benefits and Supplemental Security Income, alleging onset in July 2008. From 1993 until he stopped working in 2008, Williams worked as a landscaper or for a parks department as a recreation aide. In his applications Williams alleged that he is impaired by asthma, chronic obstructive pulmonary disease (or "COPD," which causes obstructed airflow from the lungs), hypertension, and neuropathy (a disorder resulting from nerve damage that causes weakness, numbness, and pain in the extremities). Williams also has been diagnosed with coronary artery disease, anxiety, depression, alcohol abuse, and, most recently, esophageal disorders.

Medical records for Williams's asthma, COPD, and coronary artery disease date back to January 2004 when he was treated at a suburban Chicago hospital because of chest pain. An angiogram confirmed coronary artery disease. Afterward Williams continued to report chest pain, shortness of breath, and fatigue. Tests consistently showed mild abnormalities, including obstructions in his lungs, narrowing of his arteries, and reduced air flow from his lungs. But on the whole Williams's cardiac and respiratory functions have been borderline normal. The one exception was in August 2007 when a drinking binge left Williams unconscious and resulted in a six-day stay in a hospital where tests confirmed that the blood flow from his heart was severely reduced.

Beginning in August 2006, Williams began experiencing symptoms of neuropathy, including pain and weakness in his right hand. A neurologist treated Williams, but the symptoms had not abated completely before his August 2007 hospitalization. After his release the neuropathy persisted despite a couple of months of treatment with physical and occupational therapy.

In March 2013, while his applications for benefits were pending, Williams began experiencing chest and throat pain and difficulty swallowing. He since has been diagnosed with a host of esophageal problems (e.g., esophagitis, Barrett's esophagus, esophageal ulcer, hernia).

In addition, Williams has been treated for anxiety, depression, and alcohol abuse. Medical records first mention anxiety in 2005, when that condition was diagnosed secondary to coronary issues during a hospital visit. He visited the hospital several more times for side effects from alcohol abuse, and doctors consistently noted his anxiety and depression and prescribed paroxetine and sertraline, drugs used to treat those conditions. In October 2013 Pamela Lawson, a licensed clinical social worker at the VA Medical Center in Chicago, scored

his Global Assessment of Functioning[1] as 45 (indicating serious impairment), and later Dr. Zvezdana Djuric-Bijedic, the attending psychiatrist, rated his GAF as 55 (indicating moderate impairment).

Around the beginning of 2013, two state-agency physicians reviewed the medical evidence and opined that Williams could perform "heavy to very heavy" exertional work, but because of his COPD, must avoid fumes, odors, dusts, gases, and poor ventilation. Both doctors agreed with the diagnosis of COPD, which they categorized as severe, but did not mention Williams's asthma, hypertension, neuropathy, anxiety, or depression. Based on the doctors' opinions and the medical record, the Social Security Administration denied benefits initially in December 2012 and on reconsideration in March 2013. Williams sought a hearing before an ALJ, which occurred in March 2014.

At that hearing Williams said he had a minor stroke on his onset date in July 2008. He reported difficulty using his right hand because of his neuropathy and said he can lift only 5 pounds with that hand compared to 10 pounds with the other. He also reported getting winded and needing to rest after walking just 10 yards. Williams was using inhalers twice a day and taking medication for his blood pressure. He said the medication causes drowsiness for which he naps two or three times daily for 20 to 60 minutes. Williams was living alone but receiving his daughter's help with household chores. He also was preparing simple meals but using only a microwave and disposable tableware to minimize preparation and cleanup, and sometimes doing laundry. Furthermore, Williams said, he had not performed yard work in years and· was driving only once each week to a grocery store 2 blocks from his house.

A vocational expert testified that someone who (1) must avoid concentrated exposure to pulmonary irritants but can (2) lift 20 pounds occasionally and 10 pounds frequently and (3) walk or stand without limitation could perform Williams's past work as a laborer (at the light level) or recreation aide. An impaired ability to grasp, reach, or perform fine manipulations with the right hand would not change that result, the vocational expert said. But, he added, "an inability to stand and walk" for "more than two hours out of eight" would render a person unable to perform Williams's past work. And a person who must take unscheduled breaks to sleep or who will be randomly "off task" for 60 or more minutes per workday cannot maintain gainful employment.

The ALJ conducted the 5-step analysis, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), in finding Williams not disabled. At Step 1 the ALJ determined that Williams had not

---

1. The GAF is a 100-point metric used to rate overall psychological, social, and occupational functioning, with lower scores corresponding to lower functioning. Am. Psychiatric Ass'n,. Diagnostic & Statistical Manual of Mental Disorders 32–34 (4th ed., Text Rev. 2000). A GAF score of 31 to 40 reflects "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work)." *Id.* at 34 (bold removed). The American Psychiatric Association recommended physicians stop using the GAF in 2013, before the ALJ's decision in this case, citing a "conceptual lack of clarity" and "questionable psychometrics in routine practice." *See* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013). Although the American Psychiatric Association no longer endorses this metric, at the time of Williams's psychological evaluations, clinicians still used GAF scores to report their assessment of a person's overall level of functioning.

engaged in substantial gainful activity since his alleged onset in July 2008, well before his date last insured. At Step 2 the ALJ identified Williams's severe impairments as asthma, COPD, hypertension, right-arm neuropathy, and coronary artery disease. The ALJ also noted that Williams suffered from alcohol abuse and "esophageal difficulties," neither severe. At Step 3 the ALJ concluded that the severe impairments he identified, individually or in combination, did not meet a listing for presumptive disability.

Before reaching Step 4, the ALJ assessed Williams's residual functional capacity. The ALJ rejected Williams's account of disabling limitations, beginning this discussion with a familiar boilerplate: "[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible...." The ALJ first rejected as baseless Williams's "extreme allegation" that he gets winded after walking 10 yards. The ALJ characterized the results of respiratory and coronary artery examinations as "mainly normal" and said Williams's description of his daily activities—i.e., cooking, cleaning, and driving—contradicted his testimony that walking just 10 yards winded him. The ALJ then considered Williams's asthma and COPD and found that while some test results indicated a "mild obstructive defect" or other problems, most tests repeatedly had shown normal lung and cardiac function. But the ALJ did find that because of his COPD, Williams should avoid exposure to pulmonary irritants.

As for Williams's coronary artery disease and right-arm neuropathy, the ALJ concluded that most cardiovascular examinations had been normal and that the examinations of his right hand showed normal range of motion. The ALJ concluded that Williams could perform light exertional work, could lift and carry 20 pounds occasionally and 10 pounds frequently, and could frequently but not continuously reach, grasp, and perform fine manipulations. The ALJ further found that Williams's ability to stand and walk were *unlimited.* And the ALJ rejected Williams's assertion that his medications cause drowsiness. This finding as to Williams's residual functional capacity meant he could perform his past work as a laborer at the light level and as a recreation aide, also a light-level position. So at Step 4 the ALJ found Williams not disabled. The Appeals Council denied review, making the ALJ's decision the final word of the Commissioner. *See Scrogham v. Colvin,* 765 F.3d 685, 695 (7th Cir. 2014). A magistrate judge denied relief, and Williams appealed.

## II. Analysis

Williams argues that the ALJ's determination of his residual functional capacity is not supported by substantial evidence. He contends that his residual functional capacity is more limited than the ALJ found because his COPD, other impairments, and medication make it hard for him to walk for long periods of time and stay awake during the workday. The ALJ's determination of Williams's residual functional capacity is indeed problematic—and for several reasons.

To begin, the ALJ exaggerated Williams's ability to walk, which is limited to some degree by shortness of breath from his COPD and other impairments. The ALJ declined to credit Williams's testimony that he gets winded after walking only 10 yards. The ALJ said this "extreme allegation" is refuted by Williams's "mainly normal" respiratory and coronary artery

examinations, his daily activities, and his continued smoking.

This conclusion is flawed in two ways. First, in his assessment of Williams's residual functional capacity, the ALJ ruled out the existence of *any* limitation on Williams's ability to walk. That finding lacks support in Williams's testimony or the medical record. Williams's daily activities (microwaving food, occasionally doing laundry, and driving) are quite minimal. Yet the ALJ equated these very minor household tasks with an *unlimited* ability to walk during an eight-hour workday. At oral argument the Commissioner's attorney argued that the ALJ did no more than make a credibility finding based on Williams's description of his daily activities, which the ALJ is entitled to do. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). But even if one agrees that the ALJ was rightly skeptical of Williams's testimony that he could walk only 10 yards at a time, that doubt cannot explain the ALJ's extreme leap in finding that Williams could walk without *any* restriction. Such a leap is explained only by the faulty logic that we have rejected over and over again. *See, e.g., Childress v. Colvin*, 845 F.3d 789, 792–93 (7th Cir. 2017) (explaining that the ALJ erred in inferring that the claimant could engage in full-time, competitive employment because he was able to walk 30 minutes per day); *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) (same as to a claimant who could drive and perform seated household tasks); *Scrogham*, 765 F.3d at 699–701 (same for a claimant able to walk a mile twice per day); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (same for a claimant who was able to cook simple meals, vacuum, and shop for groceries).

Second, the ALJ's analysis is flawed because it rests on mischaracterizations of the record. Williams's medical history is not "normal"—tests consistently have shown at least mildly reduced heart and lung function, and the medical record is replete with references to shortness of breath and difficulty walking. Those references make sense because even the ALJ acknowledges that Williams suffers from asthma, COPD, and heart disease, all of which are severe. Moreover, the ALJ simply was wrong about Williams's smoking; the record reflects that he is a *past*, not current, smoker. And even if Williams was still smoking, that would not be a reason to discredit him without evidence of how smoking affects his impairments. *See Childress*, 845 F.3d at 793–94; *Shramek v. Apfel*, 226 F.3d 809, 812–13 (7th Cir. 2000). Thus, the ALJ's decision to find Williams able to walk without restriction is not supported by substantial evidence. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015).

Apart from exaggerating Williams's ability to walk, the ALJ also failed to address adequately his fatigue, or drowsiness, which Williams attributes to his medications for hypertension. When discussing those medications, the ALJ said only that Williams's blood pressure was "well controlled with Lisinopril 40 milligrams daily and Hydrochlorothiazide 25 milligrams daily without side effects, despite the claimant's testimony that Lisinopril causes him drowsiness." Here again, the ALJ mischaracterized the evidence—Williams said his "blood pressure pills," not Lisinopril specifically, caused drowsiness. Williams points out that the ALJ overlooked the fact that at the time of the hearing, he was taking a third blood-pressure medication, metoprolol. And in declaring him free of side effects, the ALJ relied on Williams's statements to doctors during periods in 2007 through 2009 when Williams was not taking metoprolol (although that drug was prescribed at other times during those years). Williams's statements from that era (some made before his claimed onset in

mid-2008) shed little light on whether in 2013 he was experiencing side effects from a different combination of drugs. In fact, it appears from our review of the record that in 2004 a physician cancelled a prescription for metoprolol *because that drug caused Williams fatigue.* Moreover, Williams also reported in his applications for benefits that he experiences drowsiness from other drugs, including Advair, Neurontin, Ventolin, and nitroglycerin, yet the ALJ did not address those assertions at all.

Thus, the decision to disbelieve Williams's account of drowsiness not only is poorly explained but is contradicted by the record. *See Shauger v. Astrue,* 675 F.3d 690, 697–98 (7th Cir. 2012); *Craft v. Astrue,* 539 F.3d 668, 679–80 (7th Cir. 2008). That also means the ALJ failed to consider how Williams's drowsiness and lack of energy, combined with his other limitations like difficulty walking, might have affected his ability to perform his past work, which is critical to his disability claim. *See Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014) (noting that symptom "in combination with" other impairments "may be critical" to disability claim); *Craft,* 539 F.3d at 680.

Because reversal is warranted, we need not say much about Williams's remaining argument, that the ALJ erred by failing to assign weight to opinions from treating sources, including his primary doctor (Dr. Geoffrey Caplea), his cardiologist (Dr. Kavita Krishnasamy), an anesthesiologist, and the mental-health professionals at the VA Medical Center. We note, however, that Williams is correct that at least for his claim filed in 2012, the ALJ must at least consider the opinions of treating sources and explain what weight they are entitled to. *See Stage v. Colvin,* 812 F.3d 1121, 1126 (7th Cir. 2016); SSR 96-5p, 1996 WL 374183, at *2–3, *5 (July 2, 1996). The

Commissioner does not dispute that this rule will continue to govern this case. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017). In this case the ALJ declined to consider Dr. Caplea's and Dr. Krishnasamy's opinions, incorrectly saying he needn't consider them at all because they infringed on the determination of Williams's residual functional capacity, an issue reserved to the Commissioner. And the ALJ inexplicably said nothing at all about Williams's mental-health conditions, much less the GAF scores assigned to him by professionals at the VA Medical Center. These likely were errors, but the ALJ will have an opportunity to reconsider all relevant treating source opinions on remand.

REVERSED.