NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2022
Decided February 22, 2022

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 20-3399

| | |
|---|---|
| DEANNA SEBRANEK, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 19-cv-213-slc |
| KILOLO KIJAKAZI, Commissioner of Social Security, *Defendant-Appellee*. | Stephen L. Crocker, *Magistrate Judge*. |

**O R D E R**

Deanna Sebranek, now 54, seeks Social Security benefits based on impairments (chronic neck and back pain, along with anxiety and depression) she sustained from a car accident. An administrative law judge denied her application after finding that she could perform past work. The district court upheld that decision. Sebranek now contends that the ALJ erred by improperly discounting opinions from state-agency physicians and examiners. The ALJ, however, provided good reasons for discounting the opinions and supported her findings with substantial evidence, so we affirm.

## Background

**Treatment History and Application Processing**

A. Initial Treatment History

Sebranek was in a car accident in 2010. She received some treatment for chronic pain as well as depression and anxiety after the accident, but more details appear in a mid-2013 consultation report with Dr. Sara Christenson Holz, a spine specialist with the University of Wisconsin Spine Clinic. Dr. Holz recorded her impressions that Sebranek had a biomechanical dysfunction of the thoracic spine with a rotated rib on the right side, as well as low back pain consistent with facet arthropathy (painful arthritis of the joints) and maybe lumbar-disc herniation. Dr. Holz noted Sebranek's complaint that her pain was quite severe, particularly around the right shoulder blade. Dr. Holz also noted that MRIs from 2010 confirmed herniations in both her neck (C5-C6 vertebrae) and lower back (L5-S1 vertebrae).

Dr. Holz referred Sebranek to a physical therapist to reduce her pain and strengthen her back. Sebranek reported having headaches, severe shoulder pain, and "subtle" lower back pain. She continued physical therapy through November 2013, making some progress, but she reported that she still experienced pain (which she measured as six out of ten) and that being active for long periods aggravated her symptoms.

In late 2013, Sebranek received from Dr. Holz several "facet injections" (injections of anesthetics directly into the impaired spinal joints) to relieve her back pain. She reported that the injections helped "quite a bit," and she would continue receiving these injections for several years. As for restrictions, Dr. Holz mentioned that Sebranek should not lift more than twenty pounds and must change positions every half hour for five to ten minutes.

B. Initial Application and Subsequent Treatment History

Sebranek applied for disability benefits in May 2015, identifying an array of conditions that she said limited her ability to work (neck and back pain, disc herniation, depression, anxiety, and fibromyalgia). She specified an onset date of mid-2013. In her application, she reported working full-time as an administrative assistant in 2013 and part-time as a real estate agent beginning in 2014.

Sebranek filed several reports detailing how her pain limited her from working and engaging in daily-living activities. In a 2015 Function Report, she said her back pain flared and caused her to adjust positions or take breaks while working on her computer.

To manage her pain, she reported taking hydrocodone (an opioid) six times a day. She noted that she prepared dinner and helped with household cleaning and yardwork, though less than she used to. In another report, Sebranek stated that she could sit and stand for seven hours throughout the day and sit for an hour at a time.

In mid-2015, in connection with her application, Sebranek underwent a consultative exam with psychologist Michael Goldstein for an assessment of her depression and anxiety. Dr. Goldstein opined that Sebranek's behaviors indicated chronic pain, depression, and anxiety, but that her functioning was otherwise normal. He did, however, note moderate limitations in her ability to remember and follow simple instructions, maintain concentration and work pace, and withstand routine work stresses and changes.

Around the same time, two non-examining, state-agency consultants reviewed Sebranek's application and prepared reports of her residual functional capacity. Pat Chan, M.D., who submitted a physical capacity assessment, opined that Sebranek should be restricted to lifting no more than ten pounds and sitting for at least six hours per day and that she could be expected to sustain at least sedentary work despite her chronic pain. Deborah Pape, Ph.D. submitted a mental capacity assessment, opining that Sebranek had moderate restrictions in understanding and carrying out detailed instructions, maintaining attention and concentration, acting within a schedule, completing a normal workday, and adapting to changes.

The agency concluded that Sebranek was not disabled and denied her claim.

C.  Reconsideration and Subsequent Treatment History

In early 2016, Sebranek sought reconsideration, noting increasing pain and worsening depression. In a second Function Report, she said that her pain increased when sitting, standing, driving, or working on the computer, and that her depression affected her work stamina. She noted that she still cooked, cleaned, and visited friends out-of-state, but that her pain often prevented her from leaving the house.

Sebranek underwent a second psychological exam, this time with psychologist Steven Benish. Dr. Benish opined that Sebranek had major depressive disorder ("severe") and panic disorder. He noted that Sebranek had mild difficulty with interpersonal skills, adapting to change, concentration and maintaining attention, and moderate difficulty with responding to stress and recalling basic instructions. He also opined that these difficulties would not support a finding of disability: Sebranek's mental-status exam was "essentially normal."

Around this time, new residual functional capacity assessments were prepared by non-examining, state-agency consultants. Syd Foster, D.O., submitted a physical-capacity report and, like Dr. Chan the year before, opined that Sebranek could do at least sedentary work, adding that Sebranek should avoid "even moderate exposure" to workplace hazards. As for the mental-capacity assessment, Mary Menken, Ph.D., determined that Sebranek had moderate restrictions in understanding and carrying out detailed instructions, maintaining attention and concentration for extended periods, and completing a normal workday.

The agency again denied Sebranek's claim.

**ALJ Hearing and District Court Proceedings**

Sebranek received a hearing in early 2018 with an administrative law judge. Sebranek testified to working after the accident in several short-term, part-time jobs. She said that her back pain flared up every few weeks, limiting her to lifting ten pounds at most. As for her mental impairments, Sebranek generally described her depression as severe and her medications as helpful, and she eschewed therapy.

A vocational expert then answered hypothetical questions about the availability of work for someone with Sebranek's background and limitations. The expert testified that this individual—if limited to light work—could perform Sebranek's past work as an administrative assistant. The expert also testified that if this individual were further limited to sedentary work, she could still work as an administrative assistant. And if additional mental limitations were imposed (relating to understanding, remembering, and carrying out only simple instructions, tolerating occasional changes in a routine setting, and not interacting with the public), the expert testified that the individual could not work as an administrative assistant but could perform thousands of unskilled jobs (such as bench worker, inspector, or office helper).

The ALJ began the requisite five-step analysis, 20 CFR §§ 404.1520(a), 416.920(a) by finding that Sebranek met several threshold requirements but fell short of having a disability per se. At step one, the ALJ found that Sebranek had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Sebranek had a severe impairment: degenerative disc disease. But at step three, the ALJ found that Sebranek's impairment was not a disability per se under 20 CFR Part 404, Subpart P, Appendix 1.

As for Sebranek's mental impairments (anxiety and depression) at step three, the ALJ found them to be non-severe because they caused no more than "mild" limitation

in any of her functional areas. In reaching this conclusion, the ALJ gave little weight to the opinions of both the state-agency medical consultants (Pape and Menken) and the psychological examiners (Goldstein and Benish). The consultants never personally evaluated Sebranek, the ALJ said, and the examiners saw Sebranek only once. Furthermore, the ALJ found their opinions inconsistent with (1) Sebranek's mental-status examinations that "typically indicated normal findings"; (2) Sebranek's "lack of significant mental health treatment"; and (3) Sebranek's own testimony.

The ALJ then found at step four that Sebranek had the residual functional capacity to perform light work with some additional physical limitations. The ALJ noted that Sebranek's degenerative disc disease could reasonably be expected to cause pain, but that both the medical evidence and Sebranek's own testimony failed to support her claim that her symptoms were disabling. The ALJ gave little weight to the opinions of two state-agency consultants (Drs. Chan and Foster) that Sebranek could perform at least sedentary work. To start, neither doctor examined Sebranek personally. Moreover, their opinions were inconsistent with her treatment records. Sebranek's treatment was "sporadic, routine, and conservative" and, despite reports of pain and reduced range of motion, Sebranek's physical examinations were "overwhelmingly" normal. Finally, Sebranek's testimony about her part-time work history after the alleged onset date, when combined with her self-reported activities, supported the conclusion that Sebranek could perform light work. Based on the vocational expert's testimony, the ALJ found that Sebranek could perform her past work as an administrative assistant, and so was not disabled. The ALJ added that even if Sebranek could not perform her past work, she could transition to other work.

The Appeals Council denied review, rendering the ALJ's opinion final, 42 U.S.C. § 405(g). The district court upheld the ALJ's decision.

## Analysis

We are limited to determining whether the ALJ supported her decision by "substantial evidence," that is, evidence a reasonable mind might accept supports a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

### Physical Limitations

Sebranek first argues that the ALJ inadequately supported her decision to give little weight to the opinions of the state-agency physicians (Drs. Chan and Foster). Both consultants concluded that Sebranek could perform *at least* sedentary work. But a claimant's residual functional capacity is the *most* they can do given their impairments,

*Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008), and determining that capacity is reserved to the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Here, the ALJ reasonably pointed out inconsistences with the consultants' opinions and medical evidence in the record. For example, Drs. Chan and Foster opined that Sebranek was limited to lifting just ten pounds, but Dr. Holz, the only evaluating physician to assess Sebranek's capacity, restricted her to "lifting no more than twenty pounds." The ALJ also noted that the opinions were inconsistent with Sebranek's physical examinations reflecting normal strength and posture and her "sporadic, routine, and conservative" treatment history. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). Taken together, these findings reasonably support a decision to assign little weight to the more limiting opinions of Drs. Chan and Foster.

Sebranek also argues that the ALJ failed to show that her daily activities and part-time work were inconsistent with a finding that she was limited to sedentary work. She says that the record shows that she no longer could engage in many activities that she once did, and that the activities that she could still engage in exacerbated her pain.

Although ALJs should not equate the ability to perform daily activities with a capacity for full-time work, *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016), the ALJ did not do so here. Rather, she considered Sebranek's activities when determining how limiting her pain was, and found that Sebranek's self-reported activities, combined with her part-time work, supported a finding that she was not so limited. The ALJ credited Sebranek's reports that she could walk and stand for long periods of time, and that she could drive, shop, attend church, and visit friends out-of-state, all while her medical exams "overwhelmingly indicated normal" results. The ALJ also credited Sebranek's statement that she worked thirty hours per week as an administrative assistant, and that her various part-time jobs show that her impairments are not as debilitating as the claimant suggests. *See Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

**Mental Limitations**

Sebranek next challenges the ALJ's conclusion that her mental impairments posed minimal limitations on her ability to work. She accuses the ALJ of "playing doctor" by discounting the opinions about her mental limitations from the state-agency medical consultants (Pape and Menken) and the psychological examiners (Goldstein and Benish). She argues that (1) the record does not support the ALJ's conclusion that her evaluations yielded normal findings; (2) the ALJ improperly found that she lacks a severe mental impairment because of her part-time work history; and (3) the ALJ did

not account for her mental limitations when determining her residual functional capacity.

Sebranek's argument conflates the psychologists' diagnoses of her mental disorders with their assessments of how limiting those disorders are. Although the psychologists did concur that Sebranek showed symptoms of anxiety and depression, they did not all find that those symptoms severely limited Sebranek. Dr. Goldstein, for instance, diagnosed Sebranek with anxiety and depression, but found only moderate and mild limitations in basic work activities. Dr. Benish said her depression was severe but also that her exam was "essentially normal" and that any disability impairment would be due to "medical and not psychiatric reasons." As for the consultants (Drs. Pape and Menken), they concurred with the evaluating psychologists' diagnoses, but also found moderate limitations at most.

AFFIRMED