In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3779

JOSE CRESPO,

*Petitioner,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social Security, and SYLVIA MATHEWS BURWELL, Secretary of Health and Human Services,

*Respondents.*

Petition for Review of an Order of the
Department of Health and Human Services
No. A-14-63

ARGUED APRIL 14, 2016 — DECIDED MAY 31, 2016

Before POSNER, KANNE, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Petitioner Jose Crespo served as the representative payee for his mother so that she could get Supplemental Security Income benefits. But Crespo's mother was not entitled to those benefits because she lived in Puerto Rico, a fact that Crespo hid from the Social Security Administration by falsely representing that she lived with him in Illinois. As

a result, an ALJ imposed a $114,956 civil monetary penalty on Crespo for the misrepresentations. Crespo appealed to the Departmental Appeals Board of the Department of Health and Human Services, which dismissed his appeal as untimely. We affirm.

## I. BACKGROUND

### A. Request to Serve as Representative Payee

On November 9, 2009, Crespo applied to be the "representative payee" for his mother, Minerva Quinones Sostre, to receive her Supplemental Security Income ("SSI") disability benefits on her behalf. In the application, Crespo represented that he should be his mother's representative payee because he "take[s] care of her" and she "lives with [him]" in Elmwood Park, Illinois. By signing the application, Crespo agreed to notify the Social Security Administration ("SSA") "promptly" if his mother left his custody, changed address, moved, or left the United States for more than thirty days. United States, for purposes of SSI benefits, means the fifty states, the District of Columbia, and the Northern Mariana Islands, *not* Puerto Rico. *See* 20 C.F.R. § 416.215.

By signing the form, Crespo acknowledged that he could be held liable for any improper overpayments he caused. The SSA then mailed confirmation to Crespo at the Elmwood Park address and reminded him that he had declared, under penalty of perjury, that the information he provided was true and correct.

Crespo submitted three representative payee reports during his tenure, confirming that his mother lived in the United States. In a report signed August 30, 2009, he reported that his mother lived with him in Elmwood Park, Illinois. In a report

signed May 26, 2010, he reported no change in her living situation. In a report signed June 15, 2011, Crespo wrote that his mother continued to live with him but at a new address located in Chicago.

*B. Suspected-Fraud Investigation*

On August 27, 2012, Crespo's sister contacted the SSA and informed it that Quinones lived in Puerto Rico and that she only returned to Illinois to fill out SSI forms.

As a result, the SSA initiated an investigation into Quinones's residency. On August 29, 2012, Crespo and Quinones met with SSA Service Representative Margie Hernandez at a suspected-fraud interview. Crespo said that his mother lived with him in Illinois. But airline records showed that Quinones flew from Puerto Rico to Chicago the day before the interview. Hernandez told Crespo he would face a penalty for every lie told to the SSA, to which he responded "that he was not lying, that his mother lived with him in Illinois, and that she had never lived in Puerto Rico."

In a statement signed after the interview, Crespo said his mother lived with him in Skokie, Illinois, that she left the United States on February 15, 2012, but that she had returned on February 20 or 21, 2012. Again, the airline records repudiate his claim that she returned in February, instead showing that she did not return until August 28, 2012.

On August 31, 2012, Crespo returned to the SSA office and signed another statement asserting that his mother had "always" traveled between Chicago and Puerto Rico. He claimed that she was in Puerto Rico from February to August 2012 but that she only stayed that long because his grandmother had died.

Quinones also wrote a statement, dated September 10, 2012, in which she claimed that she went to Puerto Rico on February 15, 2012, because her mother had died but that she returned to Illinois two weeks later. She said that she had not returned to Puerto Rico since February until September 9, 2012, but that she intended to remain there. Quinones's statement is also undermined by airline records indicating that she flew from Puerto Rico to Chicago on August 28, 2012.

Further undercutting Crespo's and Quinones's residency claim is the fact that Quinones was serving as representative payee for retirement benefits for *her own mother*, Esperanza Sostre.[1] In that role, Quinones represented her residency as Manati, Puerto Rico. The monthly checks for Sostre were mailed to Quinones in Puerto Rico, and Quinones endorsed and deposited the checks in a bank in Puerto Rico.

The SSA interviewed Crespo again on October 11, 2012. When asked how Quinones could have deposited checks in Puerto Rico if she were living in Illinois, Crespo speculated that his grandmother had signed his mother's name, despite having already identified the signature as his mother's. In addition, he said that he would sometimes mail the SSI funds to his mother in Puerto Rico. He said that Quinones was currently living in Puerto Rico, but that she used to travel frequently between Illinois and Puerto Rico. He admitted that he did not tell the SSA she resided in Puerto Rico but said he did not know he had to do so.

---

[1] Unlike SSI benefits, residents of Puerto Rico *are* eligible to collect social security retirement benefits. 20 C.F.R. § 404.460(a)(1).

*C. SSA's Suit for a Civil Monetary Penalty*

In April 2013, the SSA brought a civil action against Crespo pursuant to 42 U.S.C. § 1320a-8, alleging that he falsely misrepresented his mother's residence.

*1. Decision of the ALJ*

Crespo contested the penalty, seeking review by an ALJ. The ALJ determined that Crespo "deliberately deceived SSA about his mother's place of residence, so that she could continue receiving SSI payments," and in so doing, violated 42 U.S.C. § 1320a-8. The ALJ rejected Crespo's claim that he "did not reasonably know" his mother could not reside in Puerto Rico. The ALJ concluded that Crespo's statements "consisted of half-truths, claims that defy credulity, and verifiable falsehoods." Accordingly, the ALJ found a civil monetary penalty appropriate.

Having resolved liability, the ALJ then determined the appropriate amount of the penalty. The SSA sought a total civil monetary penalty of $114,956. The statute authorizes "an assessment, in lieu of damages" in an amount "not more than twice the amount of benefits or payments paid as a result of such a statement or representation or such a withholding of disclosure." § 1320a-8(a)(1). The SSA sought an award of $19,956, representing twice the amount of benefits improperly paid while Crespo was acting as representative payee.

In addition, the statute authorizes a "civil money penalty of not more than $5,000 for each such statement or representation or each receipt of such benefits or payments while withholding disclosure of such fact." § 1320a-8(a)(1). The SSA sought a $95,000 penalty, consisting of $5,000 for nineteen

months[2] of receipt of benefits while withholding a material fact.

After finding that the penalty sought was within statutory limits, the ALJ then considered the regulatory criteria to determine whether the specific penalty sought was appropriate. The regulations require the ALJ to consider:

> (1) [t]he nature of the statements, representations, or actions … and the circumstances under which they occurred; (2) [t]he degree of culpability of the person committing the offense; (3) [t]he history of prior offenses of the person committing the offense; (4) [t]he financial condition of the person committing the offense; and (5) [s]uch other matters as justice may require.

20 C.F.R. § 498.106.

The ALJ pointed to several factors in favor of imposing the penalty. Specifically, it noted that Crespo engaged in a lengthy pattern of deception by knowingly withholding his mother's residence. When asked about his mother's residence during the investigation, he lied and gave conflicting or false information on several occasions.

In considering mitigating factors, the ALJ noted that Crespo did not have a history of prior offenses. Crespo also argued that his financial condition was a factor in mitigation be-

---

[2] The SSA only sought a penalty for the months from February 2011 through August 2012, despite evidence that Crespo was withholding the fact of his mother's travel and residence since November 2009.

cause he is a "lower middle class individual" who is a supervisor at the Illinois Department of Employment Security.[3] But Crespo did not provide any documented evidence of his financial condition. Without any evidence establishing his financial condition, Crespo did not meet his burden to show that he could not pay the penalty.

Accordingly, the ALJ found the $114,956 penalty reasonable and imposed it on March 6, 2014.

*2. Untimely Appeal to the Departmental Appeals Board*

A party may appeal a civil monetary penalty imposed by an ALJ to the Departmental Appeals Board ("DAB") of the Department of Health and Human Services "within 30 days of the date of service of the initial decision." 20 C.F.R. § 498.221(a). If sent by mail, the date of service is "deemed to be five days from the date of mailing." 20 C.F.R. § 498.220(d). The ALJ's decision was mailed on March 7, 2014, so it was deemed served on March 12, 2014, at which point Crespo had thirty days to file his notice of appeal.

Crespo did not file a notice of appeal until April 16, 2014—five days late. The DAB ordered Crespo to show cause as to why his appeal should not be dismissed as untimely. Crespo responded that he "reasonably believed" he had thirty days from March 18, 2014—the date the decision was "actually delivered." He claimed "he received only approximately 24 days

---

[3] We find it hard to believe that someone who evaluates unemployment-benefits claims would "not know" that there is an obligation to be truthful in one's applications for benefits, but as there is far more upon which to reject Crespo's arguments, we do not dwell on the point.

or so" because the decision was not delivered "in the normal expected period of 5 days."

The DAB rejected Crespo's argument as to why his untimely filing should be excused. It noted that the regulations are clear that decisions sent by mail are deemed filed five days after mailing, regardless of the date of actual delivery, and that notices of appeal are due thirty days after service. Furthermore, the DAB guidelines enclosed with the ALJ's decision set out the filing deadlines.

Finally, the DAB noted that Crespo could have sought an extension of the filing deadline if he needed more time in which to file his appeal, but he did not. Accordingly, on June 4, 2014, the DAB declined to review Crespo's appeal because it was untimely filed.

*D. Petition for Federal Review*

On August 4, 2014, Crespo filed a petition for review in federal *district* court. The district court granted the SSA's motion to dismiss for lack of subject-matter jurisdiction because petitions for review of civil monetary penalties must be filed directly in the court of appeals pursuant to 42 U.S.C. § 1320a-8(d)(1). Crespo appealed.

We heard oral argument on August 4, 2015, and asked why the district court could not have transferred the case to this court pursuant to 28 U.S.C. § 1631. The district court indicated that it was willing on remand to vacate its judgment and transfer the appeal. We granted Crespo's motion to remand, and the district court vacated its judgment and transferred the appeal.

After the district court transferred the appeal, we ordered the parties to submit new briefs. We specifically ordered the

parties to "address whether Crespo filed a timely appeal of the ALJ's decision to the [DAB] and, if not, whether an untimely appeal to the [DAB] would affect this court's ability to review the ALJ's decision."

Finally, after much ado, the merits of Crespo's petition for review are properly before us.

## II. ANALYSIS

On appeal, Crespo continues to argue that his petition for review was properly before the district court. That is incorrect. As to the merits of his petition, he argues (1) that he "was improperly assessed fine and penalties" under 42 U.S.C. § 1320a-8 and (2) that the civil monetary penalty violates the excessive fines clause of the Eighth Amendment. We reject Crespo's arguments.

### A. Jurisdiction in the Court of Appeals

Crespo renews his argument that jurisdiction over this appeal is proper in the district court pursuant to 42 U.S.C. § 405(g). Section 405(g) permits review in the district court of any "final decision of the Commissioner of Social Security" after "[a]dministrative determination of entitlement to benefits," § 405(b). Crespo argues that because the ALJ's decision in effect terminated his mother's SSI benefits, review is proper in the district court.

Crespo is mistaken. He seeks relief from the $114,956 civil monetary penalty that was imposed pursuant to 42 U.S.C. § 1320a-8, which requires petitions for judicial review to be filed in the court of appeals. § 1320a-8(d)(1); *see also* 30 Fed. Proc., L. Ed. § 71:690 ("In a proceeding under the statute penalizing false statements in connection with … supplemental

security income payments, the jurisdiction of the Court of Appeals is exclusive … .").

Judicial review may be sought by "[a]ny person adversely affected by a determination of the Commissioner of Social Security" by filing in the court of appeals "within 60 days following the date the person is notified of the Commissioner's determination[,] a written petition requesting that the determination be modified or set aside." § 1320a-8(d)(1). "Upon such filing, the court shall have jurisdiction of the proceeding and of the question determined therein[.]" *Id.*

The SSA concedes that Crespo filed a petition for judicial review within sixty days after notification of the DAB's decision. After the district court vacated its judgment and transferred Crespo's petition to this court pursuant to 28 U.S.C. § 1631, the petition was in the proper forum for review.

*B. Review of the Administrative Agency's Decision*

Having satisfied ourselves of jurisdiction being proper in this court, we turn now to the merits of Crespo's petition.

*1. Exhaustion of Administrative Remedies*

The SSA would have us summarily dismiss this appeal for failing to exhaust administrative remedies. Specifically, the SSA contends that by not timely appealing the ALJ's decision to the DAB, Crespo is precluded from seeking *any* judicial review.[4]

---

[4] In direct contravention of our order, Crespo does not address the effect on our review of the DAB's dismissal for untimeliness. That deficiency is sufficient to find that Crespo has waived the point, *Hildebrandt v. Ill. Dep't Nat. Res.*, 347 F.3d 1014, 1025 n.6 (7th Cir. 2003), but we will exercise our discretion and reach the merits.

We disagree. Crespo filed his petition for judicial review within sixty days after the DAB's decision declining review of the ALJ's initial decision. A decision by the DAB "to decline review" is as much a "decision of the Commissioner" as a decision on the merits. *See* 20 C.F.R. § 498.222(a). Therefore, by timely filing a petition for judicial review, Crespo preserved our jurisdiction to review "*the question determined therein*" — meaning the question resolved by the DAB in its decision. 42 U.S.C. § 1320a-8(d)(1) (emphasis added).

The DAB declined to review the ALJ's decision on the grounds that the appeal was not timely filed. Therefore, Crespo has exhausted his administrative remedies on the question of whether his appeal to the DAB was timely filed. *See* 42 U.S.C. § 1320a-8(d)(1); 20 C.F.R. § 498.222(a); *see also Laboski v. Ashcroft*, 387 F.3d 628, 631 (7th Cir. 2004) ("Because the [Board of Immigration Appeals] had ample opportunity to consider [an asylum applicant's] argument concerning the timeliness of his appeal, he did not fail to exhaust his administrative remedies on this issue, and it is properly before this Court.").

*2. Review of the DAB's Decision*

Although we may not, as Crespo would have it, review the ALJ's initial decision, we do review the DAB's decision that Crespo's appeal was untimely filed.

We review a final agency action only to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The agency's findings of fact, "if supported by substantial evidence," are conclusive. 42 U.S.C. § 1320a-8(d)(2).

Crespo argues that the DAB was incorrect in finding that his appeal "was untimely, not within 30 days of receiving notice." (Pet'r's Br. at 5.) Crespo's argument rests on a misinterpretation of the filing regulations. Unless an individual seeks an extension of time to file, the regulations provide that the time to file an appeal is within thirty days after the ALJ serves the parties with the initial decision. 20 C.F.R. § 498.220(d). That deadline is extended by five days if the initial decision is served by mail. *Id.* Nothing in the regulations, however, ties this deadline to when an individual receives *actual* notice.

The ALJ's initial decision was mailed on March 7, 2014, meaning that "service" occurred on March 12, 2014. Crespo had thirty days—until April 11, 2014—to either file an appeal or request an extension of time for good cause pursuant to 20 C.F.R. § 498.221(a).

Crespo did neither. Instead, he filed an appeal on April 16, 2014—five days too late. The DAB gave him the opportunity to show "good cause" for the late filing. His cause was that he "reasonably believed" he had thirty days from March 18, the day he actually received the ALJ's initial decision. He added that the "spirit of the law" in § 498.221 "is to give appellants 30 days" to file an appeal, and that "he received only approximately 24 days or so."

The DAB did not abuse its discretion in rejecting Crespo's untimely filed appeal and finding good cause lacking. The regulation is clear that appeals are due thirty days after the ALJ's initial decision is deemed served, which is five days after the date of mailing. A copy of the regulation is included when the decision is delivered. Furthermore, Crespo offered no reason why he did not request an extension pursuant to 20 C.F.R. § 498.221(a) if he needed more than twenty-four days.

The DAB's decision to decline review was well within its authority, and Crespo has offered no valid reason why it was an abuse of discretion.

*C. Excessive Fines Clause*

Finally, in three conclusory, redundant sentences, Crespo asserts that the penalty imposed violates his Eighth Amendment right against excessive fines and cruel and unusual punishment. U.S. Const. amend. VIII.

Crespo never raised this argument to the DAB. 42 U.S.C. § 1320a-8(d)(1) commands that "[n]o objection that has not been urged before the Commissioner of Social Security shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances," none of which are present here.

Moreover, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Instead of developing his excessive-fines-clause argument, Crespo devoted his brief to attacking our jurisdiction and the ALJ's initial decision. Crespo's complete lack of development of this argument is sufficient to find waiver, especially given that this area of law is quite unsettled.

As an initial matter, it is not even clear that the excessive fines clause *applies* to civil monetary damages. *See United States v. Rogan*, 517 F.3d 449, 453–54 (7th Cir. 2008) (noting that it is not established that treble damages under False Claims Act are "fines"); *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 259–60 (1989) (holding that punitive damages are not "fines").

Even if we were to accept that a penalty paid to the sovereign constitutes a "fine" within the meaning of the Eighth Amendment, *see Browning-Ferris*, 492 U.S. at 265, it is even less clear that the penalty assessed in this case qualifies as "excessive." That is because "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *United States v. Bajakajian*, 524 U.S. 321, 336 (1998). The penalty imposed against Crespo was within statutory limits.

Suffice it to say that for this court to wade into this unsettled sea, the litigant advocating it must do far more than baldly assert its applicability. Accordingly, we hold that Crespo has waived the claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the Department of Health and Human Services.