In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 17-2896

CLAUDE C. BRITT,

*Plaintiff-Appellant*,

*v.*

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
Social Security Administration

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 10320 — **M. David Weisman**, *Magistrate Judge*.

_____

ARGUED APRIL 24, 2018 — DECIDED MAY 4, 2018

_____

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges*.

PER CURIAM. Claude Britt, now 55, applied for Disability
Insurance Benefits and Supplemental Security Income after a
construction crane toppled over and smashed his big toe. An
administrative law judge ("ALJ") granted Britt benefits for the
period beginning in March 2013, but denied him benefits for
the four-year period immediately preceding that time because

he could perform sedentary work. On appeal Britt argues that the ALJ disregarded his testimony about his need to elevate his foot, as well as an orthopedic surgeon's report about the same, and gave too little weight to an agency doctor's opinion that he could work for only 3.5 hours in a day. Substantial evidence supports the ALJ's decision, so we affirm the judgment.

## I. BACKGROUND

While Claude Britt was working on a construction site in May 2008, a crane crushed his right foot's big toe. An emergency-room physician ordered an x-ray that revealed a fracture in the tip of Britt's toe, as well as a laceration—injuries that understandably caused pain and swelling. The doctor removed Britt's nail, gave him a tetanus shot, and instructed him to elevate his foot and follow up with an orthopedic surgeon.

Four days later, the orthopedic surgeon, Dr. Anand Vora, saw Britt and opined that he could return to work in a week but in the meantime should elevate his foot to reduce swelling. The following week the doctor noted continuing pain and swelling, but he added that Britt could return to work "walking less than one hour a day in a seated job" and elevating his foot as needed. (A.R. 627.)

Britt then began visiting another orthopedic surgeon, Dr. Paul DeFrino, who supervised the healing process. The swelling in Britt's toe gradually subsided, and by September 2008, Dr. DeFrino opined that Britt was ready for light-duty work.

Dr. Brian Toolan, an orthopedic surgeon specializing in foot and ankle disorders at The University of Chicago Medical Center then evaluated Britt in November 2008 and concluded

that Britt should be able to return to seated "light" work within three to four months. (A.R. 660, 656.) Dr. Toolan noted that Britt's complaints of a hypersensitive nerve were subjective in nature and that there were no discrete objective findings to corroborate them. A month later, Dr. Toolan again opined that Britt was capable of "light duty work." (A.R. 821.) In January 2009, Dr. Toolan declined to see Britt again to evaluate his suitability for an inpatient pain-management program; the doctor clarified that Britt had been offered a partial toe amputation but had chosen not to pursue that option to treat his pain.

In February 2009, Britt consulted Dr. Steven Kodros, another orthopedic surgeon, who identified inconsistencies between Britt's condition at his appointment and the other evidence in the record. At Britt's appointment, Britt was hypersensitive and had a significant limp, and yet in four surveillance videos that were gathered as part of Britt's workers' compensation case, Britt walked normally and briskly.

Throughout the following year, Britt's condition persisted. In March 2009, after undergoing a functional capacity evaluation, as recommended by Dr. Toolan, a physical therapist cleared Britt to work immediately at a "physical demand level" that was characterized as heavy. (A.R. 750–51.) That month Britt was fired, he says, "because of [his] condition(s)." (A.R. 499.) By June, a certified rehabilitation counselor concluded that Britt could work as a security guard, telemarketer, or light manufacturer. By late 2010, Dr. DeFrino characterized Britt's pain as persistent and opined that he could perform only sedentary work because of his swelling, pain, hypersensitivity, and stiffness.

In late 2011, a state-agency physician, Dr. Bharati Jhaveri, reviewed Britt's records and concluded that he could perform medium work based on his ability to squat, ambulate for 50 feet unassisted, and move his ankles through their full ranges. Britt had normal motor strength in all extremities. Dr. Jhaveri characterized Britt as only "partially credible" based on inconsistencies between the clinical findings and Britt's denials that he could lift heavy items and walk at the same time or that he could stay on his feet for more than 20 minutes. (A.R. 178–82.)

In mid-2013, Dr. Carolyn Hildreth, an internist, performed a consultative examination and opined that Britt could work for only 3.5 hours a day. She did not identify medical or clinical findings to support this assessment. Dr. Hildreth did note that Britt had an abnormal gait, required the use of a cane and walker, had "severe difficulty" when attempting to walk on his toes and heels, and that Britt reported that he was lying down for eight to ten hours a day. (A.R. 981–82, 986.) Nevertheless, he could still move about, frequently lift and carry up to 10 pounds, and occasionally lift and carry 11–20 pounds.

Britt applied in February 2011 for Disability Insurance Benefits and Supplemental Security Income, alleging a disability onset date of March 31, 2009. At a hearing before an ALJ, Britt testified that he could only lie in bed with his foot elevated and had "never, ever, ever been in this kind of pain." (A.R. 121.) The ALJ nevertheless determined that he was not disabled. The Appeals Council then remanded so that the ALJ could specify the evidence supporting the assessed limitations and consider Medical Vocational Rule 201.21, which directs a finding of disability for individuals approaching age 50.

At a second hearing before another ALJ, Britt testified that elevating his foot at home and work relieved throbbing pain that felt like someone was stabbing him in the leg. The pain relief would last about an hour, but the pain always returned. A vocational expert then opined that someone with Britt's residual functional capacity before March 7, 2013, could have been an assembler, sorter, or visual inspector. But if Britt had to elevate his foot for a couple of hours each day, the vocational expert continued, he would be precluded from those jobs.

Applying the familiar five-step analysis, the ALJ decided that Britt was disabled beginning on March 7, 2013. The ALJ determined that Britt had not been engaged in substantial gainful activity since his alleged onset date (step one), had a severe impairment of "right foot crush injury with neuropathy" (step two), and that Britt's impairment did not meet or medically equal a listing (step three). Britt's residual functional capacity ("RFC") included the ability to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) and § 416.967(a) except that he required the use of a cane to ambulate in the workplace. The ALJ declined to find that Britt needed to elevate his foot at work, because his testimony to that effect was inconsistent with other medical evidence in the record and "not fully credible." At step four, the ALJ found that Britt could not perform any past relevant work.

Then, the ALJ applied the grids and concluded that Britt became disabled six months before his fiftieth birthday, on March 7, 2013, though he was not disabled before that point. On March 7, Britt's limitation to sedentary work rendered him disabled and entitled to Supplemental Security Income bene-

fits. See 20 C.F.R. § 404.1563. But Britt was not entitled to Disability Insurance Benefits because he was not disabled before his date last insured, September 30, 2012. The Appeals Council denied Britt's request for review.

Britt appealed to the district court, and a magistrate judge, presiding with the parties' consent, upheld the ALJ's decision. Britt's appeal from the district court order upholding the decision is before us now.

## II. ANALYSIS

Britt argues that the ALJ erred in its determination of his residual functional capacity by failing to evaluate his testimony about his need to elevate his foot, as well as an orthopedic surgeon's report that Britt should elevate his foot "as necessary," and by giving too little weight to an agency doctor's opinion that he could work for only 3.5 hours in a day. But substantial evidence supports the ALJ's decision, so his argument fails. *See White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992).

Britt's strongest argument is that the ALJ failed to evaluate his testimony that he needed to elevate his foot as a treatment measure to reduce pain. That restriction is outcome-determinative because the vocational expert testified that elevating his foot during working hours would exclude all jobs. Britt maintains that the case must be remanded because the ALJ acknowledged his claim that he must elevate his foot at work but failed to explain why that limitation was not included in the RFC. ALJs must confront evidence that supports a finding of disabled, like Britt's testimony, and then explain why it was rejected. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010). And RFC assessments must explain why a reported

limitation is or is not consistent with the evidence in the record. SSR 16-3p, 2017 WL 5180304, at *8.

But the ALJ did explain in his decision why he rejected Britt's testimony. It is true that the ALJ described Britt as "not fully credible," a phrase that this court has previously criticized because it is too ambiguous. *See Martinez v. Astrue*, 630 F.3d 693, 696–97 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Nevertheless, the ALJ also explained that he gave "great weight" to Dr. Slodki's testimony that elevation was not medically necessary. The ALJ justified this determination by noting that Dr. Slodki's opinion was consistent with the objective medical evidence. No further explanation was required.

Britt next contends that the ALJ erred by not evaluating Dr. Vora's opinion that Britt should elevate his foot "as needed." But here too there was no error because that recommendation was a temporary measure. Dr. Vora recommended—immediately after the injury and almost a year before Britt's alleged onset date—merely that Britt elevate his foot to reduce swelling. No objective medical evidence postdating Britt's alleged onset date supports his allegation that he must elevate his leg at work. In fact, Dr. Slodki—the medical expert who testified at Britt's first hearing—opined that elevation was not medically necessary after the alleged onset date. Moreover, the doctors who treated him proposed other solutions to mitigate Britt's pain, such as a partial toe amputation, which Britt declined to pursue. No treating doctor suggested foot elevation beyond the immediate aftermath of the injury. An ALJ must accord controlling weight to a treating source's opinion if it is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Schaaf v. Astrue*,

602 F.3d 869, 875 (7th Cir. 2010). But Dr. Vora's opinion suggesting that Britt elevate his foot in the short-term does not translate into a long-term need, so the ALJ was entitled to limit it to its proper context.

Britt's final argument is that the ALJ gave insufficient weight to the agency's examining expert, Dr. Hildreth, who opined that he could work only 3.5 hours a day—a figure inconsistent with full-time employment. Britt believes that the ALJ wrongly discounted this opinion by according it only "moderate" weight.

But the ALJ adequately explained that he gave only "moderate" weight to this opinion because the doctor relied on Britt's subjective complaints that the ALJ discounted as "not fully credible." For example, Britt had an abnormal gait, used a rolling walker at the appointment, and said that he was laying down eight to ten hours a day. But there was video evidence in the record of Britt walking normally, even briskly. "[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). An ALJ can give less than controlling weight to medical opinions based on subjective reports and can even reject a doctor's opinion entirely if it appears based on a claimant's exaggerated subjective allegations. *Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). Based on the inconsistencies between Dr. Hildreth's opinion and other evidence such as the videos, the ALJ reasonably discounted Dr. Hildreth's opinion.

Finally, to the extent Britt believes that the ALJ should have re-contacted Dr. Hildreth for an explanation regarding

the inconsistencies between her report and those of other doctors, the ALJ was not required to do so because the record contained adequate information for the ALJ to render a decision. *See Skinner v. Astrue*, 478 F.3d 836, 843–44 (7th Cir. 2007). With the information at hand, the ALJ was entitled to decide whether to believe Dr. Hildreth or the other doctors, as long as substantial evidence supported that decision. *See Dixon*, 270 F.3d at 1178. The ALJ reasonably gave less weight to Dr. Hildreth's opinion gleaned from just one examination, compared to Britt's long-term doctors, such as Dr. DeFrino, who saw Britt repeatedly during the relevant time period and ultimately opined that he could perform sedentary work.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.