**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 6, 2018
Decided July 31, 2018

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-3300

| | |
|---|---|
| SHARON HORR, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Indiana, Fort Wayne Division. |
| | |
| *v.* | No. 1:16-CV-226-TLS |
| | |
| NANCY A. BERRYHILL, | Theresa L. Springmann, |
| Acting Commissioner of Social Security, | *Chief Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Sharon Horr (pronounced "Harr") applied for disability insurance benefits based on pain caused primarily by fibromyalgia and degenerative disc disease. An administrative law judge ("ALJ") concluded that she could perform light work and denied benefits. But the district court remanded the case for certain evidence to be addressed, and the case was reassigned to a second ALJ. That ALJ found Horr not disabled, and the district court upheld the denial of benefits.

On appeal Horr argues that the ALJ (1) failed to properly evaluate her testimony when analyzing her residual functional capacity and (2) improperly discounted two

doctors' opinions. We affirm the judgment because the ALJ appropriately weighed the medical reports, the ALJ's credibility assessment is entitled to special deference, and Horr's challenge is underdeveloped.

## Background

Horr alleges that she became disabled in May 2008, at age 37, due to various physical and mental ailments. As relevant here, we focus on her medical history of fibromyalgia, degenerative disc disease in her neck and back, knee pain, and carpal tunnel. We begin with the two doctors whose treatment notes she believes were improperly weighed.

Dr. Robert Shugart, an orthopedic surgeon, began treating Horr in 2005 when she first complained of low-back pain. Because of a "relatively large" disc herniation, she tried pain-relief procedures, including a nerve-root block, an epidural injection, and a sacroiliac-joint injection. But even after Horr underwent lumbar fusion surgery in 2006, she still suffered back spasms. For a while she reported that she was doing well, but her back pain returned. She also told Dr. Shugart that she felt constant, sharp, and deep pain in her neck, shoulder, and arm, and that standing or sitting exacerbated the pain. Dr. Shugart ordered a cervical spine MRI, which revealed muscular strain and moderate degenerative changes. An X-ray showed a narrowing of the space between two vertebrae. An epidural failed to relieve her pain, which worsened.

In July 2011 Dr. Shugart surgically removed a disc and inserted a bone graft in Horr's neck. The pain temporarily resolved, though she later reported bilateral shoulder pain and numbness in her fingertips. After two months she still had tight shoulders. More pain developed several months later in her neck and right arm, which Dr. Shugart attributed to fibromyalgia.

Meanwhile, in November 2011 Horr saw Dr. Daniel Roth, a pain-management doctor. He recorded symptoms of painful burning, stabbing, and aching in her neck, shoulder, arm, low back, and legs. She tested positive for spinal-cord compression, decreased and painful ranges of motion, sacroiliac-joint tenderness, neck nerve irritation, myofascial pain, and osteoarthritis. Dr. Roth injected a corticosteroid into both sides of her neck.

In a second visit two months later, Dr. Roth recorded the pain in Horr's neck, shoulders, and arms as seven out of ten. She described the pain as burning, shooting, paralyzing, and shocking, and stated that it worsened throughout the day. She also reported pain in her low back that radiated down her legs. Dr. Roth determined that Horr had tenderness when he pushed on pressure points, decreased and painful ranges

of motion, and pinched nerves in her neck. He identified her as impaired from a variety of ailments, including failed neck and low back surgery, chronic cervical radiculopathy, cervical facet arthropathy, lumbar radiculopathy, fibromyalgia, sacroiliitis, lumbar facet arthropathy, and chronic pain syndrome.

After considering Horr's substantial medical history, Dr. Jerry Smartt, Jr., a state-agency consultative examiner, performed a residual functional capacity assessment. He concluded that in 2011 Horr could occasionally lift 20 pounds, stand and/or walk for six out of eight hours, sit for about six hours in a day, and use hand and/or foot controls for an unlimited period of time.

In 2012 at a hearing before an administrative law judge, Horr testified that in an eight-hour day, she had to lie down for seven hours, could stand for only five minutes at a time, sit for only thirty minutes at a time (and for one hour in an eight-hour day), and lift a gallon of milk "probably once." Her limitations stemmed from neck pain that was "always there" but worsened if she moved her head, sat, or lifted something. Additionally, she felt back pain that spread to her hips if she stood, walked, or sat too long in one position. Her fibromyalgia exacerbated the pain in her arthritic right knee, especially when she bent it, walked, or put weight on her leg. The fibromyalgia manifested in other joints, and lying down helped to alleviate these symptoms. Horr also complained of numbness in the fingertips on her right hand that affected her ability to type accurately. Pain in her neck, back, hands, and knees kept her from working.

The ALJ denied benefits after concluding that Horr could perform light work, as a cashier, folder, or mail clerk. The Appeals Council denied review. But the district court remanded for the ALJ to address Dr. Roth's treatment notes, and the Appeals Council reassigned the case to a new ALJ.

Applying the familiar five-step analysis in 20 C.F.R. § 404.1520(a)(4), the second ALJ decided that Horr was not disabled. At a second hearing, Horr testified that it hurt to move her neck, but that lying down alleviated some of the pain. The ALJ determined that Horr had not been engaged in substantial gainful activity since her alleged onset date (step one); that she had severe impairments, including cervical and lumbar degenerative disc disease, status post cervical and lumbar surgical fusion, chronic pain syndrome, and fibromyalgia (step two); and that her impairments did not meet or medically equal a listing (step three).

Turning to Horr's testimonial evidence, the ALJ determined that her statements "far exceed[ed] the objective medical evidence," which weighed against "according them more than little weight." For example, though Horr said she could not move her neck without triggering pain, only one doctor noted that she had severely reduced

range of motion. The ALJ explained that in assessing Horr's credibility, she had "considered [Horr's] testimony from her previous hearing" and incorporated it by reference. One such reference concerned Horr's statement that she had neck pain all of the time, back pain whenever she stood or walked, fingertip numbness, fibromyalgia, and stiffness when walking.

Assessing Horr's residual functional capacity ("RFC"), the ALJ decided that she could perform sedentary work except that she could only stand and walk in combination for two hours and sit for six hours during an eight-hour workday, and lift, push, and pull up to ten pounds. The ALJ also found that Horr could not perform any past relevant work (step four), and credited the vocational expert's testimony that Horr could be a sorter, hand packer, or an inspector (step five). The Appeals Council denied review. Horr appealed to the district court, which upheld the second decision.

## Analysis

Horr's strongest argument is that the second ALJ improperly discredited her testimony from the first administrative hearing because no objective medical evidence supported it. She regards her testimony as the most contemporaneous and detailed account of her limitations and maintains that because the ALJ's RFC determination failed to address the symptoms about which she testified, that determination is flawed.

Horr's argument fails for a number of reasons. First, it is underdeveloped. In her brief Horr does not explain why the ALJ's discussion of the objective medical evidence was "an error in reasoning" or what specific limitations the second RFC determination (which was more restrictive than the first) overlooked. Her attorney could not clarify this at oral argument. Horr had two chances to persuade different ALJs that she was credible and failed each time. She offers no challenge to this relevant passage in the ALJ's decision:

> [I]f the claimant's testimony was credible, she could not look up, down, side to side, or look at a book or computer screen without having pain. However, the findings upon physical examination by numerous physicians are not consistent with this. While Dr. Posner noted the claimant to have severely reduced neck range of motion, no other physician did. Further, Dr. Posner's finding is unsupported by the results of the diagnostic testing ordered by orthopedic surgeon Dr. McGee prior to her exam. Lastly, exams subsequent to Dr. Posner's did not corroborate her finding. … [T]he undersigned finds the claimant's statements regarding her impairments and associated limitations far exceed the

> objective medical evidence. This weighs against according them more than little weight.

Appellant's Brief, Short Appendix at 42, ECF No. 8. Horr does not explain why this reasoning, including the adverse credibility finding, was "patently wrong" as required. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

That said, we do see certain issues with the ALJ's analysis. Notwithstanding the passage above, Dr. Roth noted that Horr had a painful and reduced range of motion in her neck. Diagnostic testing (MRIs and X-rays) corroborated Horr's testimony on this point. Also, Horr's fibromyalgia "cannot be measured with objective tests aside from a trigger-point assessment," so her testimony about pain and limitations from that disorder cannot be discredited solely because no objective medical evidence supported it. *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017). Horr testified to other ailments (such as that her back, hands, and knees made it difficult to sit, stand, walk, lift, or handle objects) that the ALJ did not include in the RFC assessment. *See Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018). Finally, the ALJ's ultimate credibility determination could have been clearer; this court has remanded cases in which an ALJ made ambiguous credibility determinations. *See, e.g.*, *Martinez v. Astrue*, 630 F.3d 693, 696–97 (7th Cir. 2011).

Nonetheless, Horr's arguments about the RFC determination are "perfunctory and undeveloped" so they are waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). We give special deference to findings of credibility by the ALJs who hear testimony and examine other evidence. *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). Given the detailed medical proof, as well as the documentary and testimonial evidence, we conclude that the ALJ's RFC determination was based on substantial evidence.

Horr's remaining arguments are less promising. She contends that the second ALJ "played doctor" by giving "the lowest weight" rather than "controlling weight" to two treatment notes from Dr. Roth. The ALJ explained that Dr. Roth's treatment notes were not medical opinions and thus not automatically entitled to controlling weight because if "that were true, every page of every record would constitute a medical opinion, … which would render the treating physician rule meaningless." Indeed, Dr. Roth's reports contain symptoms and diagnoses, but not a prognosis, a discussion of what Horr could do despite her impairments, or an assessment of her physical restrictions. By contrast, a medical opinion is a statement that reflects a judgment about the nature and severity of the impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and any physical or mental restrictions. 20 C.F.R. § 404.1527(a)(1); *House v. Berryhill*, No. 1:17-cv-02109-SEB-TAB, 2018 WL 1556173, at *6 (S.D. Ind. Mar. 30, 2018). In any event, the ALJ did not give "the

lowest weight" to Dr. Roth's reports. Instead, the ALJ acknowledged that the notes were relevant medical evidence and gave them "significant" weight.

Finally, Horr contends that the ALJ selectively read Dr. Shugart's opinions, focusing on the doctor's observation that some of Horr's test results were within normal limits. Horr argues that the ALJ improperly ignored other sections of the doctor's reports that involved her radicular shoulder pain and a July 2011 neck surgery, and the doctor's opinion that myofascial pain is a component of her fibromyalgia. But she misunderstands the ALJ's decision. The ALJ *did* note that Horr complained of shoulder pain, that Dr. Shugart performed the surgery, and that the doctor opined that the myofascial pain was a component of her fibromyalgia. Notably, the ALJ also gave the "greatest weight" to Dr. Shugart's opinion because of the length of his treatment relationship with Horr, so we reject this argument.

For these reasons, we AFFIRM the district court's judgment.