**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 18, 2019
Decided January 9, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1867

| | |
|---|---|
| TROY BRANDON HINDS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 17-2182 |
| | |
| ANDREW M. SAUL, | Eric I. Long, |
| Commissioner of Social Security | *Magistrate Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

Troy Brandon Hinds, a 48-year-old man with musculoskeletal problems, challenges the denial of his application for disability benefits. He argues that the ALJ erred in weighing the medical opinion evidence, failed to evaluate his migraines as an impairment, and improperly discounted his and his fiancée's testimony regarding his symptoms. We see the evidence another way and affirm.

**I**

Hinds worked for years as an engineering technician, a job that required him to visit construction sites and use computer-aided drafting software. Later he worked as floor staff at PetSmart until he no longer was physically able to do the work.

At a hearing before an administrative law judge, Hinds testified about his past work, daily activities, difficulties moving around, and the treatment options he has pursued. His then-fiancée also testified, describing Hinds's limitations helping around the house, the intensity of his migraines, and her skepticism about the helpfulness of particular methods of treatment.

The ALJ concluded that Hinds was not disabled. In the course of reaching that conclusion, the ALJ did find that Hinds had several severe impairments: "unspecified arthropathies, dysfunction of major joint, other disorders of bone and cartilage, disorders of muscle, ligament and fascia, and degenerative disc disease." The ALJ also discussed Hinds's other ailments, including obesity (which was not severe), hypothyroidism (his symptoms were stable, and he had no ongoing complaints), and sleep apnea (he slept well when using his CPAP machine). The ALJ likewise addressed Hinds's migraines, concluding they were "not a medically determinable impairment," given the lack of evidence from an acceptable medical source. From there the ALJ determined that none of Hinds's impairments, alone or together, met or equaled the severity of any listed impairment. See 20 C.F.R. Part 404, Subpart P, App'x 1. The ALJ next determined that Hinds had the residual functional capacity to perform light work, subject to several additional lifting- and movement-based limitations—and that this RFC allowed him to perform his past work as an architect technician.

In reaching this RFC determination, the ALJ focused on the late-2015-to-early-2016 opinions of Hinds's treating physician, Dr. Holly Dallas, and the 2014 opinions of two state-agency physicians. Dr. Dallas opined that, among other things, Hinds was extremely limited in his ability to sit, stand, walk, or lift even light objects, but the ALJ gave this opinion "little weight," mainly because it was neither internally consistent nor otherwise consistent with the broader record evidence. By contrast, the ALJ gave "great weight" to the opinions of the two state-agency physicians, opinions the ALJ deemed "uncontroverted and well-supported." Both state-agency physicians concluded that, although Hinds had some joint- and spine-related impairments, his ability to sit, stand, and lift objects was not significantly impaired.

The ALJ also considered the testimony of Hinds and his then-fiancée but concluded that neither supported his claim of disability. The ALJ found that Hinds's own account of "limited daily activities cannot be objectively verified with any reasonable degree of certainty," only weak evidence supported his assertion that his limitations were attributable to his medical conditions, and his reported limitations were outweighed by the objective medical evidence and the opinions of the state-agency physicians. As for Hinds's fiancée's testimony, the ALJ acknowledged that it supported some of Hinds's alleged limitations but did not show an inability to perform light work.

On appeal in the district court, Hinds contended that the ALJ improperly weighed the medical opinions of the physicians involved, failed to properly account for his migraines, and improperly discounted his subjective symptoms. Magistrate Judge Long, sitting by consent, disagreed and entered summary judgment for the Commissioner. The magistrate concluded that the ALJ's evaluations of the medical opinion evidence were amply supported, the ALJ properly found the evidence insufficient to establish that Hinds's migraines amounted to an impairment, and the ALJ's evaluation of Hinds's subjective symptoms were supported by substantial evidence.

**II**

Now on appeal in our court, Hinds argues that the ALJ incorrectly weighed the medical opinion evidence. Specifically, he disputes the three bases relied upon by the ALJ to assign "little weight" to the medical opinion of his treating physician, Dr. Dallas: (1) that Dr. Dallas's opinion was contradicted by her other treatment notes and by the other medical evidence in general; (2) that her assessment relied on Hinds's subjective complaints; and (3) that her opinion was less reliable because she had been Hinds's physician for only a few months and seen him only a few times. He also contends that the ALJ improperly assigned "great weight" to the state-agency physicians by suggesting that their testimony was "uncontroverted."

We review agency findings of fact for substantial evidence—meaning we look to the administrative law record and ask "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency "is not high," as the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

## A

The ALJ's first basis for discounting Dr. Dallas's opinion—that there were discrepancies between her opinion and the record evidence—finds adequate support in the record. The ALJ discussed Hinds's medical history chronologically and at length, noting that examining physicians frequently found that he had normal strength, range of motion, and mobility. The ALJ then highlighted one of Dr. Dallas's evaluations that contradicted her own later assessment of Hinds's impairments: just months before opining that Hinds suffered from constant lower lumbar pain, Dr. Dallas had noted that Hinds had a normal gait and range of motion and had no muscle and joint pain, specifically commenting that his lumbar pain was "not bothering him too much right now."

Regarding the second of the ALJ's bases—the decision to discount Dr. Dallas's view because it relied too much on Hinds's subjective complaints—this determination also finds adequate support in the record. In completing a "Lumbar Spine Residual Functional Capacity Questionnaire," Dr. Dallas relied heavily on a "functional abilities assessment" conducted by a physical therapist. In evaluating Hinds's functional abilities (to sit, stand, lay down, and walk), Dr. Dallas appears to have adopted Hinds's self-reported limitations from the therapist's assessment. Because the ALJ reasonably concluded that these subjective complaints lacked objective medical findings, there was no error in discounting Dr. Dallas's opinion to the extent that it relied heavily on those subjective complaints. See *Britt v. Berryhill*, 889 F.3d 422, 426–27 (7th Cir. 2018); see also *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

As for the ALJ's third basis—the limited number of Dr. Dallas's visits with Hinds (between two and four times over just a few months)—the ALJ had discretion to account for this fact. An ALJ may consider treatment duration and the number of patient visits when weighing medical opinions, see 20 C.F.R. § 404.1527(c)(2)(ii), *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013), and Hinds has not explained why the ALJ's determination here was error.

To be sure, we agree with Hinds that the ALJ improperly assessed the state-agency physicians' findings as "uncontroverted": Dr. Dallas's opinions do contradict those of the state physicians. But given that the ALJ gave "little weight" to Dr. Dallas's medical opinions, we conclude this mistake was harmless.

**B**

Next, Hinds makes a four-pronged argument that the ALJ improperly discounted his subjective complaints. He contends, first, that the ALJ improperly relied on treatment notes by Dr. Dallas that seemed to contradict his complaints of musculoskeletal pain. He insists that these reports are not reliable barometers of his musculoskeletal problems because their focus was his headaches and sleep issues. Yet Hinds presents neither evidence nor any legal basis to support his assertion that these medical reports should be mistrusted, nor does he identify any errors in the reports themselves.

Second, Hinds contends that the ALJ improperly discounted his testimony that he declined some forms of treatment (such as injections and narcotics) because he feared physician error and could not afford treatment. Yet there is no evidence that the ALJ ignored or discounted this testimony. At the hearing, the ALJ discussed Hinds's fears and financial situation with him. Hinds testified that he had refused injections because he feared physician error, and the ALJ responded that his unwillingness to proceed with that recommended treatment outweighed the severity of his symptoms. As for Hinds's ability to afford treatment, he admitted that he had medical insurance but had not checked to see what it covered. The ALJ considered this testimony when evaluating Hinds's credibility about his subjective complaints—exactly as the agency's guidance contemplates. See SSR 16-3P at 8.

Third, Hinds argues that the ALJ, in attributing gaps in treatment to his lack of medical need, overlooked his testimony that he was seeking disability benefits to help pay for medical treatment. But the ALJ did not disregard his testimony. At the hearing, the ALJ asked Hinds to identify "what it is that [he] can't pay for." In response, Hinds said that shots "will be very expensive," but later admitted that the ALJ was correct to question that response, given his testimony that he had not sought injections out of fear, and that he had insurance "through the State." Finally, in response to questioning from the ALJ, Hinds conceded that he was not complying with his doctors' orders to do physical therapy, while also suggesting that he was not doing anything to try to get better. The ALJ's opinion is consistent with this exchange.

Fourth, Hinds maintains that the ALJ improperly discounted his testimony about his daily activities because it was "impossible to verify." True, it would be error to discount his and his fiancée's testimony about his activities of daily living solely

"because [they] cannot be objectively verified." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). But the ALJ expressly rooted the discounting of Hinds's testimony in the "other factors discussed in this decision"—presumably, the objective medical evidence (such as Dr. Dallas's treatment notes that Hinds had a normal gait and range of motion and had no muscle and joint pain), as well as the opinions of the state-agency physicians. On this record, then, the ALJ's finding that Hinds's testimony was not credible is supported by substantial evidence. See *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018). As for his then-fiancée's testimony (about how much Hinds helps around the house, what medication he takes, and whether and how often they go out together), the ALJ concluded that her testimony was not "indicative of a complete inability to perform basic work activities" consistent with Hinds's residual functional capacity. Hinds has presented no reason to believe this evaluation was erroneous.

Finally, Hinds argues that the ALJ failed to account for his migraines—wrongly concluding that they did not constitute a medically determinable impairment. We agree. We have recognized that migraines can be more than mere symptoms; they can themselves rise to the level of an impairment, depending on their severity. See *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014). In 2009, Hinds suffered from migraines, but they abated for some years after successful treatment with beta blockers, only to return in late 2015. Dr. Jacob Stelle discussed the possibility that Hinds's new headaches were due to migraines, and Dr. Dallas later diagnosed them.

In the end, though, we see any mistake by the ALJ as harmless because the record would not support a finding that the migraines impeded Hinds's ability to work. See *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Dr. Dallas specifically noted that over-the-counter Aleve was enough to control Hinds's headaches. And, as the record shows, Hinds's 2009 migraines were well-controlled by the beta blocker Propranolol: doctors' notes from 2010 and 2011 show that while taking it he was "[d]oing pretty good" and was having "no headaches." Hinds stopped taking Propranolol between 2010 and 2011 (the record does not say why), and he did not report headaches again until late 2015. Notably, Dr. Dallas recommended that he resume taking beta blockers; Hinds has not explained, nor does the record show, why resuming them as Dr. Dallas proposed would be insufficient to manage his symptoms.

For these reasons, we conclude that the ALJ supported its decision with substantial evidence and therefore AFFIRM.